[No. H000146. Sixth Dist. Dec. 4, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
NORBERTO JOHN VARGAS, Defendant and Appellant.

[No. H000517. Sixth Dist. Dec. 4, 1985.]

In re NORBERTO JOHN VARGAS on Habeas Corpus.

COUNSEL

John P. Hannon II, under appointment by the Court of Appeal, for Defendant and Appellant and Petitioner.

John K. Van de Kamp, Attorney General, Martin S. Kaye and John W. Runde, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BRAUER, J.—A jury found appellant Norberto John Vargas guilty of a violation of Penal Code section 288, subdivision (a)[1] (lewd and lascivious

---

[1]Statutory references throughout this opinion are to the California Penal Code.

act with a child under 14). He appeals from the judgment of conviction with the following contentions.

1. The court should have continued the trial date upon granting his motion to proceed in propria persona;

2. He was tried on a count not properly part of the information;

3. The prosecutor engaged in prejudicial misconduct;

4. The court erred in failing to give CALJIC jury instruction number 2.11 *sua sponte;* and

5. The court erred in imposing a five year enhancement under section 667.51 rather than a three year enhancement under section 667.5, without stating reasons on the record.

We find appellant's assignments of error to be unmeritorious and accordingly affirm the judgment.

Appellant has also filed a habeas corpus petition in this court, attacking the judgment collaterally on the premise that the jail law library was wholly inadequate to his needs as a pro per defendant. We deny the petition for reasons explained more fully in part III of this opinion.

## I. The Facts

We set forth the facts in the light most favorable to the judgment below. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 562 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

John Vargas met the S. family through his participation as a volunteer in a March of Dimes Walk-a-Thon. The family consisted of Mrs. S., who was separated from her husband, her sons Clifford, age 14, and Jimmie, age 13, and her daughter Rita, age 11. Vargas got to know the family over the course of a month, by visiting their house, dining with them, accompanying them on a camping trip, and sometimes taking care of the kids.

On the Saturday of Memorial Day weekend 1984, Vargas arrived at the S. home and asked Mrs. S. if he could take the kids swimming at the pool at his apartment building. Rita and Jimmie wanted to go and Mrs. S. gave permission. She drove Rita and Vargas to Vargas' apartment and dropped them off. Jimmie rode his bike. After swimming for an hour or so, all three went up to Vargas' apartment to change. Jimmie was dispatched to the store

to buy fixings for lunch. Rita retired to the bathroom to bathe. She had removed her swimsuit when Vargas entered the bathroom nude. He persuaded her to accompany him to the bedroom. There she lay on the bed while he rubbed baby oil over her entire body, including her genitalia.

Vargas and Rita then proceeded to the living room where the TV set was on. At this time they were both partially clothed, from the waist up. They lay on the floor and, in Rita's words, "he humped me." Apparently this consisted of the two lying on their sides facing each other while Vargas rubbed his penis between Rita's legs in the area of her genitals. After this they finished getting dressed and Vargas told Rita not to tell anyone what had happened.

Jimmie returned from the store with the food and sat down to watch TV. Rita came over to him while Vargas was in the kitchen and declared "John humped me." Jimmie did not take her seriously.

The following evening, Sunday, the S. family was home watching TV. Rita leaned over to her mother and told her, "Mom, John humped me." Mrs. S. examined her and found she was "very red in the vagina area" and "kind of rubbed raw." She took Rita to the hospital the next evening at which time she also reported the incident to the police. The doctor who examined Rita at the hospital found no redness in the vaginal area and "no signs of trauma" though he noted that he would not expect to see residual redness after three days where there had been no penetration.

Eva Rodnick, Rita's special education teacher for approximately six years, testified at trial. She characterized Rita as "educable mentally retarded," functioning intellectually and socially on the level of a five to six year old. She further described Rita as "very trusting, very friendly, very eager to please." In Rodnick's opinion, because of Rita's limited imagination, it would be unlikely that Rita would be capable of making up and sticking to the story she told at trial.

Vargas, who handled his own defense, did not testify at trial.

The matter went to the jury on two counts of violation of section 288, subdivision (a): the bedroom incident and the living room incident. The jury found defendant guilty on the first count but was unable to reach agreement on the second. A mistrial was declared as to that count and it was later dismissed.

After the jury was discharged, a separate court trial commenced to determine the validity of prior conviction allegations. This proceeding was con-

tinued to a date concurrent with the sentencing hearing. At that time defendant was represented by deputy public defender Braudrick.

The court found that defendant had suffered prior convictions for violations of sections 286, subdivision (c) (sodomy by force), 207 (kidnaping), and 286, subdivision (b)(2) (sodomy with a child under 14), and that he had served a prison term on the 286, subdivision (c) conviction. After argument the court imposed a sentence of six years, the middle term, with a five year enhancement under section 667.51.

## II. ISSUES ON APPEAL[2]

. . . . . . . . . . . . . . . . . . . . . . . . .

■ E. *Did the Court Err in Failing to State Reasons for Its Sentencing Enhancement?*

The issue presented here can be simply stated: Is imposition of a five year enhancement under section 667.51 a "sentencing choice"? We conclude that it is not.

Section 667.51 provides that "[¶] (a) Any person who is found guilty of violating Section 288 shall receive a five-year enhancement for each prior conviction of an offense listed in subdivision (b) . . . ." Subdivision (b) lists seven specific sex crimes, including section 286 (sodomy by force) for which Vargas was previously convicted. Prior to the addition of section 667.51 to the Penal Code in 1981, enhancements for prior sex crime convictions were governed by the more general provisions of section 667.5. Section 667.5 provides for a three year enhancement where the new offense and the prior offense are among a proscribed group of "violent felonies." Vargas' present crime (§ 288, subd. (a)) and prior conviction (§ 286, subd. (c)) are both listed as "violent felonies" in section 667.5.

Both sections 667.5 and 667.51 are phrased in mandatory language. Thus their interrelation is somewhat different from that of section 667.6, subdivision (c) and section 1170.1, discussed by our Supreme Court in the case of *People* v. *Belmontes* (1983) 34 Cal.3d 335, 343-348 [193 Cal.Rptr. 882, 667 P.2d 686]. Section 1170.1 sets forth a general sentencing scheme for multiple convictions while section 667.6, added to the code in 1979, provides for more severe sentences for specific forcible sex crimes. Section 667.6, subdivision (c), however is worded thusly: "In lieu of the term

---

[2]Sections IIA-D and III have not been certified for publication.

provided in section 1170.1, a full, separate and consecutive term *may* be imposed for each violation . . ." of certain forcible sex crimes. (Italics added.) The *Belmontes* court concluded that this language gave the trial court the option in its discretion to select the harsher sentence. Accordingly this would amount to a sentencing choice under section 1170, subdivision (c) requiring that the court state its reasons.

Section 667.51 on the other hand simply states that "[a]ny person who is found guilty of violating section 288 *shall* receive a five-year enhancement for each prior conviction . . ." of listed offenses. (Italics added.) In our view this language mandates a five year enhancement in all cases where the statute applies and thus does not present a sentencing choice between section 667.5 and section 667.51.

No appellate court has directly addressed the issue. Our review of the cases, however, reveals the following: Since the effective date of section 667.51 it has been used without question or comment to impose the higher enhancement. We have found no case where a three year enhancement under section 667.5 was imposed when the criteria of section 667.51 were met. In the case of *People* v. *Rodriguez* (1984) 152 Cal.App.3d 289 [199 Cal.Rptr. 433], defendant's crime was a violation of section 288, subdivision (a) and his prior convictions fell into the specified group. In sentencing, the trial court mistakenly applied section 667.6, which covers cases where the instant crime is section 288a but not section 288, subdivision (a). Both parties contended on appeal that enhancement should have been imposed under section 667.51, and the appellate court agreed. "Section 667.51, subdivision (a) *mandates imposition of additional punishment of five years for each prior conviction of certain specified sex offenses.* [Fn. omitted.] This section does clearly apply to convictions for violations of section 288, subdivision (a) and we agree with the parties that this was the enhancement section the trial court should have applied." (*Id.,* at p. 298; italics added.)

The fundamental purpose of statutory construction is of course to ascertain the intent of the Legislature in order to effect the purpose of the law involved. (*Freedland* v. *Greco* (1955) 45 Cal.2d 462, 467 [289 P.2d 463].) In this regard we note that section 667.51 was enacted as part of 1981 legislation which addressed the serious problem of sexual abuse of children. Chapter 1064 increased the determinate sentence for a lewd act with a child under fourteen to three, six, or eight years (§ 288, subds. (a) and (b)) and added new section 1203.066 denying probation and suspended sentences to certain violators of section 288. New section 667.51, in addition to imposing a five-year enhancement, provided a fifteen-year-to-life sentence where the person had served two or more prior terms for sex offenses, and denied early parole. At the same time the Legislature repealed the statutes estab-

lishing a commitment and treatment program for mentally disordered sex offenders (Welf. & Inst. Code, §§ 6300-6330, repealed by Stats. 1981, ch. 928, p. 3485), added to the Penal Code section 1364 providing that a person convicted of a section 288 crime shall not be entitled to a hearing to determine mental disorder (Stats. 1981, ch. 928, p. 3484), and amended section 800 of the Penal Code to increase the statute of limitations for a section 288 offense. (Stats. 1981, ch. 901, p. 3428.) Thus the legislative history clearly indicates an intent that certain sex crimes, particularly those involving children, are to be punished more severely than they were under the former statutory scheme.

Our conclusion regarding section 667.51 is also in accord with general rules of construction. ■ Where statutes are *in pari materia* and their provisions are in conflict a later enacted statute will prevail, especially when it deals with a particular subject also included in the more general statute. (*Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 7 [128 Cal.Rptr. 673, 547 P.2d 449].) Thus the specific statute constitutes an exception so as to control and take precedence over conflicting provisions of a general statute on the same subject. (*Kennedy* v. *City of Ukiah* (1977) 69 Cal.App.3d 545, 552 [138 Cal.Rptr. 207].) Where a specific statute proscribes certain behavior, an accused cannot be prosecuted under a more general statute within which the behavior falls. (*People* v. *Weltsch* (1978) 84 Cal.App.3d 959, 963 [149 Cal.Rptr. 112].) Likewise, where a statute specifically imposes a sentence enhancement for certain stated crimes, it would be error to impose a lesser enhancement under a more general statute.

Although the trial court was apparently uncertain whether imposition of the five year enhancement was discretionary or mandatory, it was in our view the *only* correct disposition; thus no stated reasons were required.

### III. Habeas Corpus Petition*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

The judgment is affirmed and the habeas corpus petition is denied.

Panelli, P. J., and Leach, J.,† concurred.

Appellant's petition for review by the Supreme Court was denied March 20, 1986. Panelli, J., did not participate therein.

---

*See footnote page 271, *ante*.
†Assigned by the Chairperson of the Judicial Council.