[No. D057172. Fourth Dist., Div. One. June 9, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
JOEL CAMPOS, JR., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part II.A., B., C., D.3. and D.4.

COUNSEL

Daniel G. Koryn, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Gil Gonzalez and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

IRION, J.—A jury found Joel Campos, Jr., guilty of three counts of attempted willful, deliberate and premeditated murder (Pen. Code, §§ 187, subd. (a), 664);[1] three counts of assault with a semiautomatic firearm (§ 245, subd. (b)); and one count of discharging a firearm at an occupied motor vehicle (§ 246). The jury also found true allegations that Campos (1) committed the offenses for the benefit of a criminal street gang (§ 186.22, subd. (b)); (2) personally used a firearm during the commission of the offenses (§ 12022.5, subd. (a)); (3) personally and intentionally discharged a firearm causing great bodily injury during the commission of the offenses (§ 12022.53, subd. (d)); and (4) personally inflicted great bodily injury on a person who was not an accomplice (§ 12022.7, subd. (a)). As more fully explained in part I.D., *post*, at sentencing the trial court imposed an aggregate indeterminate prison term of 40 years to life based on the convictions of attempted murder and discharge of a firearm at an occupied motor vehicle and the

---

[1] All undesignated statutory references are to the Penal Code.

attached enhancements; imposed and stayed three determinate prison terms based on the convictions of assault with a semiautomatic firearm and the attached enhancements; ordered Campos to pay various restitution fines and court security fees; and awarded him various sentencing credits.

On appeal Campos contends (1) the trial court erred by instructing the jury with CALCRIM No. 357 on adoptive admissions because his statement to police during a pretrial interview was an invocation of his constitutional right to remain silent, not an adoptive admission; (2) insufficient evidence supports his convictions of the attempted murders of Ricardo Rodriguez and his brother Clemente Rodriguez (hereafter, the Rodriguez brothers); (3) a one-year enhancement to his sentence for having served a prior prison term must be stricken; and (4) the abstract of judgment incorrectly states how the indeterminate sentences are to run concurrently and must be corrected to conform to the sentence pronounced by the trial court at the sentencing hearing.

Before oral argument, it appeared to us that the sentence imposed on one of the attempted murder counts might be unauthorized and that the trial court might have erroneously stricken certain enhancements. We therefore obtained supplemental briefing from the parties on these issues.

For reasons explained in the unpublished portion of this opinion, we affirm the convictions on all counts but reverse certain sentencing errors. In the published portion, we reverse the error regarding the imposition of a gang alternate penalty and remand the matter for resentencing.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Shooting on May 5, 2006*

On May 5, 2006, there was a driveby shooting at the trailer park where Campos's family resided. One of the trailers hit by the bullets belonged to the Campos family. None of the witnesses interviewed by the police identified the person who fired the shots, but a description of the vehicle from which the shots were fired matched that of a vehicle owned by José Juan Cazares. Campos's sister later told him that Cazares was driving the vehicle.

B. *The Shooting on July 4, 2006*

On July 4, 2006, Cazares was traveling in his sport-utility vehicle in Indio, with the Rodriguez brothers as passengers. While Cazares stopped his vehicle at an intersection, Uriel Rodriguez drove a pickup truck alongside Cazares's vehicle.

Campos was sitting in the passenger seat of the pickup truck and began arguing with Cazares. When Campos challenged Cazares to a fight, Cazares told him to pull over. Campos then pulled out a gun and fired at least 13 rounds at Cazares. Some of the bullets struck Cazares in the right shoulder and chest; one went through his spine; and others lacerated his diaphragm, liver and right kidney. Eight other bullets penetrated the outer aspect of the driver's side of Cazares's vehicle but did not pass into the interior, and another broke the rear driver's side window. Cazares lost control of his vehicle and crashed into a building two blocks away.

Although his injuries were life threatening, Cazares successfully underwent surgery and survived. Neither of the Rodriguez brothers was struck or injured by any of the bullets.

## C.  *Campos's Arrest and Trial*

Campos was subsequently arrested. After being advised of and waiving his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602] (*Miranda*), Campos gave a videotaped interview to police during which he discussed, among other things, the shootings of May 5 and July 4, 2006.

An information was filed against Campos charging him with three counts of willful, deliberate and premeditated attempted murder (counts 1, 2 & 3) (§§ 187, subd. (a), 664); three counts of assault with a semiautomatic firearm (counts 4, 5 & 6) (§ 245, subd. (b)); and one count of discharging a firearm at an occupied motor vehicle (count 7) (§ 246). The information also alleged that Campos (1) personally inflicted great bodily injury on Cazares (§ 12022.7, subd. (a)) as to counts 1, 4 and 7; (2) was armed with a firearm during the commission of the offenses (§ 12022, subd. (a)(1)) as to counts 1, 2 and 3; (3) personally used a firearm during the commission of the offenses (§ 12022.5, subd. (a)) as to counts 1 through 6; (4) personally and intentionally discharged a firearm causing great bodily injury during the commission of the offenses (§ 12022.53, subd. (d)) as to counts 1, 2, 3 and 7; (5) committed the offenses while he was on bail (§ 12022.1) as to all counts; (6) committed the offenses for the benefit of a criminal street gang (§ 186.22, subd. (b)) as to all counts; and (7) served a prison term for a prior felony (§ 667.5, subd. (b)). The allegation concerning Campos's having served a prior prison term was later dismissed on the People's motion.

At trial, the People played the videotape of Campos's interview with the police and introduced the transcript of the interview as an exhibit. The People also introduced many photographs of the crime scene and called the victims, investigating police officers and other witnesses to testify about the shootings

of May 5 and July 4, 2006. As their last witness, the People called Sergeant Christopher Hamilton to testify as an expert on criminal street gangs. Sergeant Hamilton testified that Campos was a member of a criminal street gang and Cazares was an associate of a rival gang. Sergeant Hamilton also opined that the shooting at Cazares and his vehicle was gang related and done in retaliation for the shooting at the Campos home two months earlier.

The jury returned verdicts of guilty on all counts and found true (1) the gang allegations (§ 186.22, subd. (b)) as to all counts; (2) the allegations that Campos personally used a firearm (§ 12022.5, subd. (a)) as to counts 1 through 6; (3) the allegations that Campos personally and intentionally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)) as to counts 1, 2, 3 and 7; and (4) the allegations that Campos caused great bodily injury (§ 12022.7, subd. (a)) as to counts 1, 4 and 7. The jury returned no findings on the allegations that Campos was armed during commission of the offenses (§ 12022, subd. (a)(1)) or that he committed the offenses while on bail (§ 12022.1).

D. *Campos's Prison Sentence*

On the three convictions of attempted murder (counts 1, 2 & 3) and the conviction of shooting at an occupied vehicle (count 7), the trial court sentenced Campos to an aggregate indeterminate prison term of 40 years to life. Specifically, for the attempted willful, deliberate and premeditated murder of Cazares (count 1), the court sentenced Campos to prison for seven years to life (§§ 664, subd. (a), 3046, subd. (a)(1)), plus 25 years to life for the attached enhancement for personally and intentionally discharging a firearm causing great bodily injury (§ 12022.53, subd. (d)). As to count 1, the trial court also stated that "with respect to . . . Penal Code 186.22 (b), the gang enhancement, the additional punishment for that violation is stayed." On each of the convictions of the attempted willful, deliberate and premeditated murders of the Rodriguez brothers (counts 2 & 3) and the conviction of discharging a firearm at an occupied motor vehicle (count 7), the court sentenced Campos to prison for 15 years to life (§§ 664, subd. (a), 186.22, subd. (b)(4)(B), (5)),[2] plus 25 years to life for the attached enhancement for

---

[2] Because the jury found Campos committed the crimes alleged in counts 2, 3 and 7 for the benefit of a criminal street gang, the trial court imposed the alternate penalty of 15 years to life in prison for each offense. (See *People v. Jones* (2009) 47 Cal.4th 566, 572 [98 Cal.Rptr.3d 546, 213 P.3d 997] (*Jones*) [when defendant violates § 246 for benefit of gang, § 186.22, subd. (b)(4) provides penalty is life imprisonment with minimum parole eligibility of 15 years]; *People v. Lopez* (2005) 34 Cal.4th 1002, 1004 [22 Cal.Rptr.3d 869, 103 P.3d 270] (*Lopez*) [when defendant is convicted of felony that carries life sentence and crime is gang related, § 186.22, subd. (b)(5) "applies and imposes a minimum term of 15 years before the defendant may be considered for parole"].) As we explain in part II.D.1., *post*, the court should have imposed the same minimum prison sentence on count 1.

personally discharging a firearm and causing great bodily injury (§ 12022.53, subd. (d)). The trial court struck the firearm enhancements under section 12022.5, subdivision (a) from counts 1, 2 and 3 and also struck the great bodily injury enhancements under section 12022.7, subdivision (a) from counts 1 and 7. The court ordered that the indeterminate terms imposed on the convictions on counts 2, 3 and 7 were to run concurrently with that imposed on the conviction on count 1.

On the three convictions for assault with a semiautomatic firearm (counts 4, 5 & 6), the trial court imposed and, pursuant to section 654, stayed execution of determinate base sentences and attached enhancements. We do not discuss the details of these sentences because they are not at issue on this appeal.

The court also imposed a consecutive one-year enhancement for Campos's prior prison term (§ 667.5, subd. (b)), even though the court previously had dismissed the allegations pertaining to this enhancement.

Campos filed a timely notice of appeal.

## II

## DISCUSSION

### A.–C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### D. *The Trial Court Imposed an Unauthorized Sentence on Count 1 and Improperly Struck Certain Enhancement Allegations from Counts 1, 2, 3 and 7*

As noted earlier, we requested supplemental briefing from the parties on two issues: (1) the propriety of the sentence of seven years to life in prison imposed for the conviction on count 1 of the attempted murder of Cazares and (2) the propriety of the trial court's striking from counts 1, 2, 3 and 7 the firearm enhancements under section 12022.5, subdivision (a) and the great bodily injury enhancements under section 12022.7, subdivision (a). The parties agree that the sentence imposed for the conviction on count 1 was unauthorized and that the striking of the above mentioned enhancements was error. The parties disagree, however, on whether the trial court was required to impose the alternate penalty prescribed by section 186.22,

---

*See footnote, *ante,* page 438.

subdivision (b)(5) for the conviction on count 1 or had discretion to dismiss or strike the gang allegations and refuse to impose the alternate penalty. For reasons we shall explain, we conclude imposition of the section 186.22, subdivision (b)(5) penalty is mandatory here.

> 1. *The Trial Court Improperly Stayed the Punishment Prescribed by Section 186.22, Subdivision (b)(5) for the Conviction on Count 1*

■ The sentence of seven years to life in prison that the trial court imposed for Campos's conviction on count 1 was unauthorized. The court calculated this sentence based on section 664, subdivision (a), which specifies life imprisonment with the possibility of parole as the punishment for attempted willful, deliberate and premeditated murder, and section 3046, subdivision (a)(1), which requires a person imprisoned under a life sentence to serve *at least seven years* before being paroled.[6] ■ This sentence violates subdivision (a)(2) of section 3046, which requires a person imprisoned for life to serve "[a] term as established pursuant to any other provision of law that establishes a . . . minimum period of confinement under a life sentence before eligibility for parole" *if that period exceeds seven years.* Where, as here, gang allegations under section 186.22, subdivision (b) are found true by the jury and the underlying felony already carries a life sentence (§ 664, subd. (a) [prescribing life sentence for attempted willful, deliberate and premeditated murder]), "section 186.22, subdivision (b)(5) . . . applies and imposes a minimum term of 15 years before the defendant may be considered for parole." (*Lopez, supra,* 34 Cal.4th at p. 1004; accord, *People v. Johnson* (2003) 109 Cal.App.4th 1230, 1239 [135 Cal.Rptr.2d 848] (*Johnson*) [when crime is gang related and underlying felony already carries life sentence, "section 186.22, subdivision (b)(5) requires that the defendant serve a minimum of 15 calendar years before being considered for parole"]; *People v. Harper* (2003) 109 Cal.App.4th 520, 527 [135 Cal.Rptr.2d 120]

---

[6] The trial court apparently followed the probation officer's report, which states that the penalty for "[a]ttempted murder—w/premeditation" is " '[l]ife in prison'—earliest release 7 years." The report also states, erroneously, that *People v. Salas* (2001) 89 Cal.App.4th 1275 [108 Cal.Rptr.2d 137] required a stay of the penalty prescribed by section 186.22, subdivision (b)(5) for gang-related crimes that carry an underlying sentence of life in prison because Campos was also subject to the penalty prescribed by section 12022.53, subdivision (d) for personally and intentionally discharging a firearm causing great bodily injury. The prohibition against imposition of both penalties applies *only* to defendants who do not personally use or discharge a firearm in committing a gang-related offense. (§ 12022.53, subd. (e)(2); *People v. Brookfield* (2009) 47 Cal.4th 583, 593–594 [98 Cal.Rptr.3d 535, 213 P.3d 988] (*Brookfield*); *Salas,* at pp. 1281–1282.) The prohibition does *not* apply where, as here, the defendant personally discharges a firearm in the commission of a gang-related offense. (§ 12022.53, subd. (e)(2); *Brookfield,* at p. 593; *Jones, supra,* 47 Cal.4th at p. 572.)

The probation officer's report did not repeat this error as to Campos's convictions on count 2, 3 or 7. Thus, the trial court correctly imposed the 15-year minimum term on those convictions.

(*Harper*) ["Because Harper was sentenced to a life term, section 186.22 mandates that the alternate punishment of a 15-year parole eligibility be imposed."].) Accordingly, the sentence the trial court imposed on Campos for the conviction of the attempted murder of Cazares was unauthorized.

> 2. *The Trial Court Has No Power to Refuse to Impose the Alternate Penalty Prescribed by Section 186.22, Subdivision (b)(5)*

Although conceding the sentence imposed for the conviction on count 1 was unauthorized, Campos argues the trial court has discretion to dismiss or strike the gang allegations and refuse to impose the alternate penalty prescribed by section 186.22, subdivision (b)(5). According to Campos, such discretion is conferred by section 186.22, subdivision (g) and by section 1385, subdivision (a). We disagree.

> a. *Section 186.22, Subdivision (g) Does Not Authorize Courts to Refuse to Impose the Alternate Penalty Prescribed by Section 186.22, Subdivision (b)(5)*

Section 186.22, subdivision (g) provides: "Notwithstanding any other law, the court may *strike the additional punishment for the enhancements provided in this section* or *refuse to impose the minimum jail sentence for misdemeanors* in an unusual case where the interests of justice would best be served, if the court specifies on the record and enters into the minutes the circumstances indicating that the interests of justice would best be served by that disposition." (Italics added.) This provision does not apply to the penalty prescribed by section 186.22, subdivision (b)(5) (i.e., imprisonment for at least 15 years before parole eligibility if the felony is punishable by a life sentence) for at least two reasons.

First, unlike the penalties prescribed by section 186.22, subdivision (b)(1), which add terms of two, three, four, five or 10 years to the prison term for the underlying felony, *the penalty prescribed by section 186.22, subdivision (b)(5) "is not a sentence enhancement"* "because it is not an 'additional term of imprisonment' and it is not added to a 'base term.' " (*People v. Jefferson* (1999) 21 Cal.4th 86, 101 [86 Cal.Rptr.2d 893, 980 P.2d 441], italics added (*Jefferson*); see Cal. Rules of Court, rule 4.405(3) [defining "enhancement"].) Rather, it *"is an alternate penalty provision* that applies to any gang related underlying felony 'punishable by imprisonment in the state prison for life.' " (*People v. Briceno* (2004) 34 Cal.4th 451, 460, fn. 7 [20 Cal.Rptr.3d 418, 99 P.3d 1007], italics added (*Briceno*); see also *People v. Montes* (2003) 31 Cal.4th 350, 353, fn. 3 [2 Cal.Rptr.3d 621, 73 P.3d 489] ["section 186.22(b)(5) is properly characterized as an alternate penalty provision"]; *Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 899–900 [135

Cal.Rptr.2d 30, 69 P.3d 951] [§ 186.22, subd. (b)(5) "provide[s] for an alternate increased sentence in the form of a higher minimum eligible parole date, for certain felonies punishable by life that were committed for the benefit of a criminal street gang"].)[7] " 'Unlike an enhancement, which provides for an *additional term* of imprisonment, [a penalty provision] sets forth an alternate penalty *for the underlying felony itself*, when the jury has determined that the defendant has satisfied the conditions specified in the statute.' " (*Jones, supra*, 47 Cal.4th at p. 578.) Therefore, a trial court may not strike or otherwise refuse to impose the *alternate penalty* prescribed by section 186.22, subdivision (b)(5) under the provision authorizing a court to "strike the *additional punishment for the enhancements* provided in this section." (§ 186.22, subd. (g), italics added.)[8]

■ Second, section 186.22, subdivision (b)(5) does not impose a minimum jail sentence for misdemeanors. It imposes a minimum period of confinement of 15 years in *prison* before parole eligibility for *felonies* punishable by life in prison (*Lopez, supra*, 34 Cal.4th at p. 1004; *Johnson, supra*, 109 Cal.App.4th at p. 1239; *Harper, supra*, 109 Cal.App.4th at p. 527), such as attempted willful, deliberate and premeditated murder, the felony at issue here (see § 664, subd. (a)). The fact that the Legislature expressly included in section 186.22, subdivision (g) the minimum *jail* time that must be served before parole eligibility for gang-related *misdemeanors* (see § 186.22, subd. (d)) *but not* the minimum *prison* time that must be served before parole eligibility for gang-related *felonies* with indeterminate life sentences (see § 186.22, subd. (b)(4), (5)), indicates that the Legislature did not intend section 186.22, subdivision (g) to confer authority on trial courts to refuse to impose the minimum prison time that must be served before parole eligibility for such felonies. (See, e.g., *People v. Guzman* (2005)

---

[7] We are aware that our Supreme Court has held that *as used in section 12022.53, subdivision (e)(2)*, "the word 'enhancement' includes not only the sentence enhancements of section 186.22, but also the alternate penalty provisions in that section." (*Brookfield, supra*, 47 Cal.4th at p. 593.) The broad construction of the word "enhancement" was necessary in *Brookfield* to preserve "the Legislature's apparent goal, in section 12022.53's subdivision (e), of reserving the most severe sentences for those who *personally* used or discharged a firearm in the commission of a gang-related crime." (*Brookfield*, at p. 594; see also fn. 6, *ante*.) The Supreme Court cautioned, however: "Nothing in this opinion should be read as undermining the validity of the strict distinction this court has drawn in the past between sentence enhancements and penalty provisions in other contexts." (*Brookfield*, at p. 595.)

[8] We disagree with *People v. Torres* (2008) 163 Cal.App.4th 1420 [78 Cal.Rptr.3d 444] to the extent it held the trial court had authority to strike the alternate penalty prescribed by section 186.22, subdivision (b)(4)(C) because the court found unusual circumstances. (*Torres*, at pp. 1422, 1424, 1433 & fns. 6, 7.) *Torres* did not analyze the applicable language of section 186.22, subdivision (g), and it repeatedly and inaccurately described the alternate penalty prescribed by section 186.22, subdivision (b)(4)(C) as a "gang enhancement." (*Torres*, at pp. 1422, 1424, 1427, 1433.) As explained in the text, our Supreme Court has held that the punishments prescribed in subdivision (b)(4) and (5) of section 186.22 are alternate penalties, not enhancements.

35 Cal.4th 577, 588 [25 Cal.Rptr.3d 761, 107 P.3d 860] [expression of one thing in statute implies exclusion of others]; *People v. Gardeley* (1996) 14 Cal.4th 605, 621–622 [59 Cal.Rptr.2d 356, 927 P.2d 713] [when phrase is used in one part of statute but excluded from another, courts do not imply missing phrase in part of statute from which Legislature excluded it].)[9] Hence, a trial court may not refuse to impose the alternate penalty prescribed by section 186.22, subdivision (b)(5) under the provision authorizing a court to "refuse to impose the minimum jail sentence for misdemeanors." (§ 186.22, subd. (g).)

> b. *Section 1385, Subdivision (a) Does Not Authorize Courts to Refuse to Impose the Alternate Penalty Prescribed by Section 186.22, Subdivision (b)(5)*

■ Under section 1385, subdivision (a), a "judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." This power to dismiss extends to the entire action as well as to individual charges and allegations in the action. (*In re Varnell* (2003) 30 Cal.4th 1132, 1137 [135 Cal.Rptr.2d 619, 70 P.3d 1037].) According to Campos, section 1385, as interpreted and applied in *People v. Bonnetta* (2009) 46 Cal.4th 143 [92 Cal.Rptr.3d 370, 205 P.3d 279] (*Bonnetta*) and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628]

---

[9] We have reviewed the scant legislative history pertaining to the enactment of the language authorizing trial courts to refuse to impose the minimum jail sentence for misdemeanors when section 186.22 was amended in 1989. (See Stats. 1989, ch. 144, § 1, p. 1095.) According to the enrolled bill report: *"In cases involving certain felonies committed in the context of gang activity, an enhancement of 1, 2, or 3 years is added onto the base term for the offense.* SB 1555 also contained a provision making it a misdemeanor for a parent to encourage, further, or assist the criminal conduct of a minor child involved in a gang. The bill also required a minimum sentence for conviction of such a misdemeanor. [¶] *Under existing law, the court is authorized to strike the sentence enhancements in felony cases where the interest of justice would best be served.* However, the law enacted with last year's SB 1555 does not similarly authorize the court to refuse to impose the required minimum jail sentence in the misdemeanor cases. *This bill essentially gives the court discretionary authority in misdemeanor cases comparable to that which the court currently has for sentence enhancements in felony cases under similar circumstances."* (Off. of Crim. Justice Planning, Enrolled Bill Rep. on Sen. Bill No. 1555 (1989–1990 Reg. Sess.) July 10, 1989, pp. 1–2, italics added.)

This analysis is consistent with the view that in felony cases the trial court had power under the preamendment version of section 186.22, subdivision (g) to strike the additional terms of years prescribed by section 186.22, subdivision (b)(1), which are truly "enhancements." (See Cal. Rules of Court, rule 4.405(3) [" 'Enhancement' means an additional term of imprisonment added to the base term."].) The 1989 amendment extended a similar power to allow trial courts to refuse to impose the minimum jail sentence for misdemeanors prescribed by section 186.22, subdivision (d). But, no such power was extended to authorize trial courts to refuse to impose the alternate penalties for felonies prescribed by section 186.22, subdivision (b)(4) and (5), because, as explained in the text, they are neither enhancements nor minimum jail sentences for misdemeanors.

(*Romero*), authorizes a trial court to dismiss gang allegations and to refuse to impose the punishment prescribed by section 186.22, subdivision (b)(5). We disagree.

We do not read *Bonnetta, supra,* 46 Cal.4th 143, as authorizing courts to dismiss or strike gang allegations and to refuse to impose the gang alternate penalty prescribed by section 186.22, subdivision (b)(5). *Bonnetta* was not a gang case and did not consider the enhancements or alternate penalties prescribed by section 186.22, subdivision (b) for gang-related offenses. Rather, *Bonnetta* was a drug case in which the Supreme Court considered the propriety of the trial court's striking of allegations concerning prior convictions and the amount of the substance possessed to manufacture the drug, which, if proven, would have added many years to the defendants' base sentences. (*Bonnetta,* at pp. 147–148.) In this context, *Bonnetta* held that the discretion conferred by section 1385, subdivision (a) "on the trial courts includes the discretion to dismiss or strike *an enhancement* in the furtherance of justice." (*Bonnetta,* at p. 145, italics added.) As we have already explained, however, section 186.22, subdivision (b)(5) does not prescribe an additional term of years to be added to a base term and is therefore not an enhancement. (See Cal. Rules of Court, rule 4.405(3); *Jones, supra,* 47 Cal.4th at p. 578; *Jefferson, supra,* 21 Cal.4th at p. 101.) *Bonnetta* thus *does not support* Campos's argument that the trial court may use *section 1385, subdivision (a)* to refuse to impose the gang alternate penalty prescribed by section 186.22, subdivision (b)(5).

██ We also do not read *Romero, supra,* 13 Cal.4th 497, as supporting Campos's argument. The question in *Romero* was "whether a court may, on its own motion, strike prior felony conviction allegations in cases arising under the law known as 'Three Strikes and You're Out.' " (*Id.* at p. 504.) According to *Romero,* "the power to dismiss an action [under section 1385, subdivision (a)] includes the lesser power to strike factual allegations relevant to sentencing . . . ." (*Ibid.*) *Romero* also noted that because the power to dismiss or strike sentencing allegations "is statutory, the Legislature may eliminate it." (*Id.* at p. 518.) *Romero* cautioned, however, that courts "will not interpret a statute as eliminating [their] power under section 1385 'absent a *clear legislative direction* to the contrary.' " (*Ibid.,* italics added.) The *Romero* court found no such clear legislative direction in the "Three Strikes" law, for the "principal reason" that "the Three Strikes law *expressly* authorizes '[t]he prosecuting attorney [to] move to dismiss or strike a prior felony conviction allegation in the furtherance of justice *pursuant to Section 1385* . . . .' " (*Romero,* at p. 528, first italics added.) ██ By contrast, *section 186.22, subdivision (g) contains no such express authorization of action pursuant to section 1385;* and for the three reasons explained below, the enactment of section 186.22, subdivision (g) provides the clear legislative direction

needed to eliminate courts' power to use section 1385 to dismiss or strike gang allegations and enhancements and to refuse to impose gang alternate penalties.

■ First, the language of section 186.22, subdivision (g) manifests legislative intent to preclude operation of section 1385 as to gang allegations, enhancements and alternate penalties. Although "clear language eliminating a trial court's section 1385 authority" is required (*People v. Fritz* (1985) 40 Cal.3d 227, 230 [219 Cal.Rptr. 460, 707 P.2d 833]), "*it is not necessary that the Legislature expressly refer to section 1385 in order to preclude its operation*" (*People v. Thomas* (1992) 4 Cal.4th 206, 211 [14 Cal.Rptr.2d 174, 841 P.2d 159], italics added; accord, *Romero, supra*, 13 Cal.4th at p. 518 [to eliminate courts' power under § 1385, "the Legislature need not expressly refer to section 1385"]). Here, section 186.22, subdivision (g) does not expressly mention section 1385, but it does begin with the phrase, "Notwithstanding any other law." Use of this " 'term of art' expresses a legislative intent 'to have the specific statute control despite the existence of other law which might otherwise govern' " (*People v. Franklin* (1997) 57 Cal.App.4th 68, 74 [66 Cal.Rptr.2d 742]) and "declares the legislative intent to override all contrary law" (*Klajic v. Castaic Lake Water Agency* (2004) 121 Cal.App.4th 5, 13 [16 Cal.Rptr.3d 746]). Use of the phrase "[n]otwithstanding any other law" in section 186.22, subdivision (g) therefore indicates that courts are to apply *that statute*—and *not* any other potentially applicable statute, such as section 1385, subdivision (a)—when considering whether to exercise the powers granted by that statute.

■ This conclusion is supported by *Romero, supra*, 13 Cal.4th 497. There, our Supreme Court held that use of the phrase "[n]otwithstanding any other law" in the Three Strikes law meant that "[t]he Three Strikes law, when applicable, takes the place of whatever law would otherwise determine defendant's sentence for the current offense. The language thus eliminates potential conflicts between alternative sentencing schemes." (*Romero, supra*, 13 Cal.4th at p. 524.) By parity of reasoning, use of the phrase "[n]otwithstanding any other law" in section 186.22, subdivision (g) means that *that* statute "takes the place of whatever law would otherwise" govern the exercise of trial courts' power to strike allegations or enhancements or to refuse to impose alternate penalties in gang cases. (*Romero*, at p. 524.) Absent section 186.22, subdivision (g), section 1385, subdivision (a) would govern exercise of that power. (See *Bonnetta, supra*, 46 Cal.4th at p. 145 [§ 1385, subd. (a) authorizes trial courts to strike sentence enhancements]; *In re Varnell, supra*, 30 Cal.4th at p. 1134 [§ 1385, subd. (a) authorizes trial courts to strike allegations that trigger increased punishment].) "The language ['[n]otwithstanding any other law'] thus eliminates potential conflicts between" section

186.22, subdivision (g) and section 1385, subdivision (a). (*Romero*, at p. 524; cf. *People v. Estrada* (1997) 57 Cal.App.4th 1270, 1277 [67 Cal.Rptr.2d 596] [holding that provision of alternative sentencing scheme—§ 667.61, former subd. (f) ("Notwithstanding any other law, the court shall not strike any of the circumstances specified in subdivision (d) or (e).")—precluded operation of § 1385, subd. (a)].)

■ Second, the conclusion that trial courts may not use section 1385 to dismiss or strike gang allegations or enhancements or to refuse to impose gang alternate penalties follows from two rules of construction that apply to statutes that cover the same subject: (1) the specific statute prevails over the general statute (Code Civ. Proc., § 1859; *People v. Superior Court (Jimenez)* (2002) 28 Cal.4th 798, 808 [123 Cal.Rptr.2d 31, 50 P.3d 743]); and (2) the later-enacted statute prevails over the earlier-enacted statute (*City of Petaluma v. Pac. Tel. & Tel. Co.* (1955) 44 Cal.2d 284, 288 [282 P.2d 43]), "especially when it deals with a particular subject also included in the more general statute" (*People v. Vargas* (1985) 175 Cal.App.3d 271, 277 [220 Cal.Rptr. 720]). What is now codified as section 186.22, subdivision (g) originated in 1988 (Stats. 1988, ch. 1242, § 1, pp. 4127–4128; *id.*, ch. 1256, § 1, p. 4179) and deals with courts' powers to strike enhancements and to refuse to impose minimum periods of confinement *specifically in gang cases*; section 1385, subdivision (a) originated in 1850 (Stats. 1850, ch. 119, § 629, p. 323) and deals with dismissing or striking actions, charges, and allegations *generally in criminal cases.* ■ "Under well-established rules of construction, any inconsistency between the two provisions would be resolved by applying the more specific provision (and any amendments thereto)." (*People v. Thomas, supra*, 4 Cal.4th at p. 213 [holding § 1170.1, former subd. (h), which "provide[d] a *specific* power to strike specified enhancements," prevailed over § 1385, which "provides a broad, general power to dismiss 'actions' "]; see also *People v. Tanner* (1979) 24 Cal.3d 514, 521 [156 Cal.Rptr. 450, 596 P.2d 328] (*Tanner*) [holding § 1203.06, which was specific statute regarding "particular problem at hand," prevailed over § 1385, which "is general in nature"].) ■ Therefore, section 186.22, subdivision (g) applies here and "preclude[s] the trial court from striking [or refusing to impose the alternate penalty prescribed by section 186.22, subdivision (b)(5)]; the exercise of judicial discretion permitted pursuant to section 1385 [is] inapplicable in the face of the more specific proscription on the court's power." (*People v. Rodriguez* (1986) 42 Cal.3d 1005, 1019 [232 Cal.Rptr. 132, 728 P.2d 202].)

■ Third, and finally, trial courts may not use section 1385, subdivision (a) to dismiss or strike gang allegations or enhancements or to refuse to impose gang alternate penalties because such use would render section 186.22,

subdivision (g) "redundant and unnecessary" (*People v. Safety National Casualty Corp.* (2010) 186 Cal.App.4th 959, 966 [112 Cal.Rptr.3d 581]) or mere "meaningless surplusage" (*People v. Kennedy* (2008) 168 Cal.App.4th 1233, 1241 [86 Cal.Rptr.3d 236]). If the Legislature had intended section 1385 to be applied in gang cases to allegations, enhancements and alternate penalties, then it would have had no need to enact (or amend, see fn. 9, *ante*) section 186.22, subdivision (g) to specify in gang cases which enhancements courts may strike, which alternate penalties they may refuse to impose, and the circumstances under which they may do so. ■■ "We do not presume that the Legislature performs idle acts, nor do we construe statutory provisions so as to render them superfluous." (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 22 [276 Cal.Rptr. 303, 801 P.2d 1054].) Moreover, application of section 1385 in gang cases would effectively eliminate the limitations in section 186.22, subdivision (g) on what courts may strike or refuse to impose (i.e., enhancements for felonies and minimum jail sentences for misdemeanors), thereby rendering the "legislation a nullity." (*Tanner, supra*, 24 Cal.3d at p. 520 [rejecting use of § 1385 that would restore law in effect before enactment of legislation under consideration]; see also *People v. Thomas, supra*, 4 Cal.4th at p. 213 [rejecting use of § 1385 that would "negate" deletion of enhancement from statutory list of enhancements that could be stricken].) Hence, because section 186.22, subdivision (g) constitutes "a statutory scheme designed to effect a particular result and . . . the invocation of section 1385 would nullify that result," "clear legislative intent to abrogate trial courts' authority to strike under section 1385 exists." (*People v. Luckett* (1996) 48 Cal.App.4th 1214, 1219 [56 Cal.Rptr.2d 37].)

■■ In sum, we hold that the existence and language of section 186.22, subdivision (g) provide "clear legislative direction" (*People v. Thomas, supra*, 4 Cal.4th at p. 210) that courts are to apply that statute—and not section 1385, subdivision (a)—in gang cases when considering whether to dismiss or strike allegations or enhancements or to refuse to impose alternate penalties. Because section 186.22, subdivision (g) does not authorize courts to refuse to impose the minimum prison time that must be served before parole eligibility for felonies punishable by life in prison prescribed by section 186.22, subdivision (b)(5), we hold that imposition of that penalty is mandatory. (See *Johnson, supra*, 109 Cal.App.4th at p. 1239; *Harper, supra*, 109 Cal.App.4th at p. 527.)

3., 4.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 438.

## DISPOSITION

The convictions on all counts are affirmed. The sentence is reversed, and the matter is remanded to the trial court for resentencing in accordance with the views expressed in this opinion.

McConnell, P. J., and Huffman, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 14, 2011, S194670. Kennard, J., was of the opinion that the petition should be granted.