Filed 12/9/20  P. v. Martinez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074218 |
| v. | (Super.Ct.No. RIF1105254) |
| ROLAND ANGEL MARTINEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge.  Affirmed as modified.

Jeanine G. Strong, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Daniel Rogers, Lise Jacobson, and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

1

## FACTUAL AND PROCEDURAL HISTORY

A.     PROCEDURAL HISTORY

On November 19, 2012, an amended information charged defendant and appellant Roland Angel Martinez and codefendants Joshua Flores and Isaiah Flores[1] with two counts of attempted murder under Penal Code[2] sections 664 and 187, subdivision (a) (counts 1 & 2); two counts of attempted home invasion robbery in concert under sections 664 and 211 (counts 3 & 4); two counts of assault with a semiautomatic firearm under section 245, subdivision (b) (counts 5 & 6); and first degree burglary under section 459 (counts 7 & 8).  As to each count, the information alleged that another principal was armed with a firearm and defendant participated as a principal knowing that another principal was armed with a firearm under section 12022, subdivision (a)(1).

A jury found defendant guilty on all counts and the enhancements were found true. The trial court then sentenced defendant to an aggregate state prison term of 24 years 4 months to life in state prison, plus 180 days in county jail.  (*People v. Flores* (Oct. 21, 2014, E057930 [non-pub. opn.], *3)[3]

After defendant appealed in case No. E057930, in an unpublished opinion filed on October 21, 2014, we ordered defendant's sentences on counts 3 and 4 stayed under

---

[1] Codefendants are not parties to this current appeal.

[2] All further statutory references are to the Penal Code unless otherwise specified.

[3] On March 2, 2020, defendant filed a request that we take judicial notice of the unpublished opinion in the underlying case, *People v. Flores*, case No. E057930.  On March 16, 2020, we granted defendant's request.

section 654, which reduced his sentence to 21 years 8 months to life. We affirmed defendant's judgment in all other regards. (*People v. Flores*, *supra*, at p. *32.)

On February 15, 2019, defendant in pro. per. filed a petition for resentencing under section 1170.95 in the trial court. The court appointed counsel and defense counsel filed a brief in support of defendant's petition.

On November 15, 2019, the trial court denied and dismissed the petition for resentencing. On November 27, 2019, defendant filed a timely notice of appeal.

B.     FACTUAL HISTORY[4]

"During the evening of September 28, 2011, [Bruce Allen, Jr. (Junior)] was at home with his girlfriend, Christine Schafer; his father, [Bruce Allen, Sr. (Senior)]; and his cousin, Kevin Yip. Junior and Senior sold marijuana. There was about 13 pounds of marijuana, worth up to about $40,000, in the Allen home. Around 9:00 p.m. Travis Bandfield, a friend of the Allens, arrived in a black Volkswagen Jetta at the Allen home intending to purchase marijuana.

"Meanwhile, Roland [Martinez], who was unarmed, drove Joshua [Flores] and Isaiah [Flores; collectively, the Flores brothers] to the Allen home in a black Lexus. The Flores brothers were both armed with handguns and wore hoodies, gloves, and bandanas. They also sold marijuana. Joshua was known as the 'weed man.' Upon arriving at the Allen home in Riverside, defendants drove past the home and parked down the street.

---

[4] The facts are taken from the unpublished opinion in case No. E057930.

3

Roland remained in the car, crouched down in the driver's seat, while Joshua and Isaiah walked to the Allen home.

"Meanwhile, while Junior was in the kitchen with Bandfield conducting businesses, Senior heard the dogs start barking. As he stepped outside the front door and lit a cigarette on the front porch, unaware of the Flores brothers' presence, one of the Flores brothers struck Senior in the head. Senior felt dazed. Senior fought the Flores brothers as he struggled to get back inside. Junior saw one of the Flores brothers strike Senior above his left eye with a gun and knock Senior to his knees just inside the front door. Junior ran from the kitchen to his bedroom and retrieved two handguns. Joshua grabbed Senior from behind, pushed him to the floor, pressed a gun to his back, and ordered Senior to call for Junior to come out of his bedroom. Instead, Senior yelled, ' "They've got guns." ' Joshua shot Senior in the lower back. Isaiah ordered Yip to get on the ground and pressed a gun to his back.

"Junior emerged from his bedroom, yelled, ' "You want to disrespect me in my house," ' and fired at the Flores brothers. The Flores brothers and Junior fired at each other, resulting in both Flores brothers sustaining gunshot wounds. The shootout ended when Isaiah dragged Joshua from the house. Roland drove up to the front of the house, helped the Flores brothers into the car, and drove to the hospital. The Flores brothers survived their gunshot wounds but Joshua is now paralyzed and confined to a wheelchair.

"Junior and his girlfriend, Christine, backed out of the driveway and drove away in a red car. Junior drove to Lake Elsinore and threw two guns into the lake.

"[¶] · · · [¶]

4

"Police Officer Corey Camp, who was dispatched to the Allen home, found Senior lying in the driveway and a black backpack containing "zip-tie" restraints on the path leading to the front door. Camp found a handgun (Davis Industries .38-caliber semiautomatic) and loaded handgun magazine (9 mm) lying in the street 10 to 15 feet from Senior. The magazine did not match the handgun. Blood samples taken from the pistol and on the front porch and walkway matched Joshua's DNA profile. The blood found in Bandfield's Jetta and on the Uzi pistol found in his car also matched Joshua's DNA profile.

"Joshua testified that he and Isaiah went to the Allen home to purchase marijuana. While Joshua was in the Allens' kitchen counting the money for the purchase, Senior accused Joshua of giving him a counterfeit hundred dollar bill. The two men grabbed for the money, fought, and punched each other. Joshua was shot in the arm and returned fire down the hallway. Senior was lying in the hallway near the front door. Joshua was shot again in the finger and back, causing him to fall to the ground as he was running out the front door.

"Isaiah dragged Joshua to the street. The Flores brothers tried to get into the Jetta for cover but Joshua was too heavy for Isaiah to lift into the car. A red car backed out of the Allens' driveway and ran over Joshua's thigh and hip. The car also hit Isaiah. Roland pulled up and helped Isaiah get Joshua into the car."

## DISCUSSION

### A.      SECTION 1170.95 DOES NOT APPLY TO ATTEMPTED MURDER

Defendant contends that the trial court erred in denying his petition because Senate Bill No. 1437 (Sen. No. 1437) should apply to attempted murder. For the reasons set forth *post*, we find that the trial court properly denied defendant's petition under section 1170.95.

Sen. No. 1437 " ' "amend[s] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." ' " (*People v. Torres* (2020) 46 Cal.App.5th 1168, 1173, review granted June 24, 2020, S262011.) A defendant who has previously been convicted of murder, but would no longer be subject to murder liability under the law as amended by Sen. No. 1437, may seek resentencing pursuant to the procedure established by section 1170.95. If the defendant prevails, and had been charged with murder "generically, and the target offense was not charged, the petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes." (§ 1170.95, subd. (e).)

As to eligibility, section 1170.95 provides, in pertinent part: "(a) A person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed

6

against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.  [¶]  (2)  The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.  [¶]  (3)  The petitioner could not be convicted of first or second degree murder because of changes to [s]ection 188 or 189 made effective January 1, 2019."

Once a petition is filed, there follows a multi-step process by which the court determines whether the petition is facially sufficient, and, if so, whether the petitioner has made a prima facie showing that he falls within the provisions of statutory eligibility. (*People v. Torres*, *supra*, 46 Cal.App.5th at p. 1177.)  If the court determines the petitioner is ineligible for relief as a matter of law, the petition is denied; if not, the court proceeds to the next step.  (*Id.* at p. 1178.)  Here, the trial court denied the petition on the basis that defendant was ineligible as a matter of law, because he was not convicted of murder.  Defendant does not dispute he was convicted of attempted murder.

We recognize that there is a split in authority currently pending before our Supreme Court.  The two cases concluded that Sen. No. 1437 does not apply to any attempted murder convictions:  *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1103-1104, review granted November 13, 2019, S258175; and *People v. Munoz* (2019) 39 Cal.App.5th 738, 743, review granted November 26, 2019, S258234.  Three other cases from the Fifth Appellate District take a different view but that view is one ultimately not relevant to the present appeal.  Those cases interpret Sen. No. 1437 as abrogating the

7

natural and probable consequences doctrine as a theory of accomplice liability for attempted murder, but only if raised by direct appeal from the underlying judgment, *not* by way of a section 1170.95 petition. (*People v. Sanchez* (2020) 46 Cal.App.5th 637, 642-643, review granted June 10, 2020, S261768; *People v. Medrano* (2019) 42 Cal.App.5th 1001, 1015-1016, review granted March 11, 2020, S259948; and *People v. Larios* (2019) 42 Cal.App.5th 956, 968, review granted February 26, 2020, S259983.) The dispute over whether Sen. No. 1437 applies to attempted murder cases on direct appeal will be resolved by our Supreme Court, but it is not relevant to the present appeal because defendant raised this issue via a section 1170.95 petition. All of the courts agree that the remedy provided by section 1170.95 for defendants whose convictions have already become final applies only to defendants convicted of murder, not attempted murder. Here, it is undisputed that defendant was convicted of attempted murder, not murder.

Therefore, defendant was ineligible for relief under section 1170.95 and the trial court properly denied his petition.

B. <u>THE ABSTRACT OF JUDGMENT SHOULD BE CORRECTED</u>

Defendant contends, and the People agree, that we should correct two errors in the abstract of judgment. We agree with the parties.

First, defendant claims that "the trial court improperly sentenced appellant to state prison for seven years to life on his attempted murder conviction, which is an unauthorized sentence requiring correction." The People agree that "the trial court can be

8

directed to fix its error and impose the correct sentence of life imprisonment without reference to the minimum parole eligibility."

An unauthorized sentence may be corrected any time where the error is "clear and correctable." (*People v. Smith* (2001) 24 Cal.4th 849, 852; *People v. Scott* (1994) 9 Cal.4th 331, 354-355, citing *People v. Welch* (1993) 5 Cal.4th 228, 235.)

In this case, the trial court imposed a sentence of seven years to life on counts 1 and 2, premeditated attempted murder. The correct sentence, however, for attempted premeditated murder is an indeterminate term of life in prison with the possibility of parole. (§ 664, subd. (a); *People v. Campos* (2011) 196 Cal.App.4th 438, 447, disapproved on other grounds in *People v. Fuentes* (2016) 1 Cal.5th 218; *People v. Jefferson* (1999) 21 Cal.4th 86, 90.) The minimum parole eligibility for this indeterminate term is seven years. (§§ 664, subd. (a), 3046, subd. (a).) Seven years, however, is not a minimum term. (*People v. Felix* (2000) 22 Cal.4th 651, 654, 657-659.) The trial court erred in sentencing defendant to seven years to life on counts 1 and 2, instead of indeterminate life sentences.

Moreover, defendant claims, and the People agree, that "The abstract of judgment incorrectly states the time imposed on the section 12022, subdivision (a)(1) enhancements as to '1 to life' rather than one year."

In this case, the trial court imposed a one-year sentence for the two firearm enhancements under section 12022, subdivision (a)(1). The abstract of judgment, however, erroneously lists the sentence for the section 12022 enhancements as one year to life. The abstract should reflect a determinate term of one year for the enhancements.

## DISPOSITION

The abstract of judgment is modified to reflect the following corrections, as discussed *ante*: (1) an indeterminate life term is imposed in counts 1 and 2; and (2) a one-year sentence on the two firearm enhancements under section 12022, subdivision (a)(1) is imposed. The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


MILLER
                                                                                    J.


We concur:


RAMIREZ
            P. J.


FIELDS
            J.


10