Filed 9/11/14

CERTIFIED FOR PARTIAL PUBLICATION[*]
IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>DANIEL SAUCEDO VENEGAS,<br><br>  Defendant and Appellant. | B250678<br><br>(Los Angeles County<br>Super. Ct. No. TA120194) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Patrick Connolly, Judge.  Reversed and remanded with directions.

Stephen B. Bedrick, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

[*]     Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of Sections 2 through 5.

Appellant Daniel Saucedo Venegas was convicted, following a jury trial, of one count of shooting at an inhabited dwelling in violation of Penal Code[1] section 246, one count of shooting from a motor vehicle in violation of section 12034, subdivision (c), one count of assault on a peace officer in violation of section 245, subdivision (c), and one count of being an accessory after the fact in violation of section 32. The jury found true the allegations that the shootings and assault were committed for the benefit of a criminal street gang within the meaning of section 186.22, subdivision (b)(1)(B) and (b)(4) and that a principal was armed with a handgun in the commission of the shootings within the meaning of section 12022, subdivision (a)(1). The trial court sentenced appellant to a total term of 15 years to life in state prison for the section 246 conviction, pursuant to section 186.22, subdivision (b)(4)(B). The trial court also imposed concurrent terms of seven years for the section 12034 conviction, five years for the section 245 conviction, and three years for the section 32 conviction.

Appellant appeals from the judgment of conviction, contending the trial court erred in ruling it lacked jurisdiction to dismiss any part of count 1 and further contending the prosecutor committed misconduct in offering only a "package deal" plea bargain offer. Appellant also contends the court erred in refusing to reappoint counsel for co-defendant Michael Estrada[2] and further contends there is insufficient evidence to support the gang allegation. We hold that the trial court did have the authority to strike or dismiss the section 186.22, subdivision (b)(4), allegation in count 1, but affirm the judgment in all other respects. We reverse appellant's conviction, however, and remand the matter for the trial court to consider appellant's motion to enter an open plea. If the trial court denies that motion, appellant's conviction is ordered reinstated.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

[2] Estrada is not a party to this appeal. Appellant and Estrada were tried together, but their appeals are separate. We have previously considered Estrada's appeal. (*People v. Estrada* (Jan. 29, 2014, B247424) [nonpub. opn.].)

Facts

On September 27, 2011, about 10:30 a.m., Sylvia Lozano heard approximately three gunshots. Patricia Torres, who lived two houses away from Lozano on Indigo Street in Compton, heard five or six gunshots. Torres looked out her front window and saw a bald male who appeared to be "Latino" in front of Lozano's gate. He ran away, toward Tamarind. Lozano discovered bullet holes in a wall of her house and called 911.

Los Angeles County Sheriff's Deputy John Orozco and his partner Deputy Robles were in the vicinity, heard gunshots, and saw two vehicles travelling on Indigo at a high rate of speed. One vehicle was gold, the other green. Both ran the stop sign at the intersection, narrowly missing a collision with the deputies' car. Deputy Orozco saw that the driver of the gold car was appellant and the driver of the green car was co-defendant Estrada. Neither car had any passengers.

The deputies followed Estrada in the green car, which accelerated, ran a stop sign and turned onto Tamarind. There, the car stopped and Estrada threw an object out of the car. Luis Madera and Erika Contreras observed the object being thrown. Madera alerted Sheriff's Deputy Alfonso Rodriguez to the object. Deputy Rodriguez discovered that the object was a gun, a Glock.

Estrada turned onto Cocoa, and the deputies followed. Appellant re-appeared, driving the gold car toward the green car and the patrol car. After appellant passed the green car, he swerved toward the patrol car. Deputy Robles also swerved, and was able to avoid a collision. The deputies continued to follow Estrada in the green car as he drove through stop signs and traveled on the wrong side of the street. Estrada eventually returned to Tamarind with the deputies following. There, appellant reappeared in the gold car and drove head on into the patrol car, disabling it. The deputies were able to arrest appellant.

Sheriff's Deputies Jeff Lohmann and Saul Saucedo came to the crash scene, then drove down Caldwell following the last known direction of Estrada in the green car. The officers found the green car, a Mercury Sable, on East Caldwell. No one was inside. A bullet casing was visible on the windshield. A containment was set up around the area.

3

Deputies learned that Estrada was located inside the home of Patsy Thomas. After the house was surrounded, Estrada surrendered. Martha Oviedo, who lived across the street from Thomas, confirmed that she had seen Estrada drive up in the green car earlier.

Sheriff's Criminalist Manuel Munoz test fired the gun recovered from Tamarind Street and compared casings from that firing with casings recovered from the sidewalk in front of Lozano's home and the windshield of the green car. All of the recovered casings were fired from the recovered gun. A bullet recovered from Lozano's home had the general rifling characteristics that would be produced by being fired from the Glock, but was too deformed to be matched to the Glock.

A gunshot residue ("GSR") test was performed on Estrada on the day of his arrest. Two particles in the sample collected were consistent with gunshot residue.

At trial, the prosecution presented evidence that appellant and Estrada were members of the Compton Varrio, Born Krazy Minded, 13 gang ("BKM"). Sheriff's Investigator Joseph Sumner testified as an expert on the BKM gang. The Lozano house on Indigo Street was in territory previously claimed by the BKM gang before they were pushed out. They were trying to reclaim the area. Given a hypothetical based on the facts of this case, Investigator Sumner opined that the activities were done for the benefit of the BKM gang. Gangs often used two cars during a shooting, to facilitate the success of the shooting.

Appellant offered the testimony of Head Deputy Alternate Public Defender Armando Wood that in his experience in the Compton courthouse, the majority of shooting cases do not involve two cars.

Estrada testified on his own behalf. He admitted firing gunshots on Indigo Street, but claimed he was fired at first by two Hispanic men. He drove away. When he was stopped at a stop sign, Deputies Orozco and Robles pulled up next to him, got out of their car and pointed their guns at him. Estrada was afraid and drove away in fear. During his flight from deputies, he noticed his childhood friend appellant driving past in a gold car. Estrada parked his car and went into the backyard of the Thomas house. Rick Thomas, a

4

childhood friend, invited him inside.  At some point, the police surrounded the house and Estrada surrendered.

Discussion

1.  Authority to strike gang allegation

Appellant was charged in count 1 of the information with shooting at an occupied dwelling, and it was alleged that the shooting was committed for the benefit of a criminal street gang within the meaning of section 186.22, subdivision (b)(4).  That subdivision provides that upon conviction of the underlying offense, the defendant will be sentenced to an indeterminate term of life in prison.  From very early in this case, appellant sought a plea agreement which would provide a determinate sentence.

The prosecutor offered appellant and co-defendant Estrada a "package" plea agreement, which required both defendants to plead guilty in order for the offer to be effective.  Under this agreement, appellant would have received a determinate term of 10 years in state prison.[3]  Estrada did not want to enter into the plea agreement, so appellant moved that he be allowed to enter a guilty plea to count 1 in the "hope" that the trial court would strike the section 186.22, subdivision (b)(4)(B), provision requiring a 15 year to life term and sentence him to a determinate term.  The prosecutor opposed the motion, contending the court had no discretion to strike the allegation.  The prosecutor relied on *People v. Campos* (2011) 196 Cal.App.4th 438 ("*Campos*") and *People v. Jones* (2009) 47 Cal.4th 566 to support her contention.

The court responded as follows:  "And the court did say that the court would consider it, if the court did have discretion in doing those things.  And for reasons very similar to what [appellant's trial counsel] has already stated, I think that without this being a reflection of what occurred, because, obviously, the court has not heard those

_____

[3]      The offer would have required appellant to plead guilty to two different charges, which would have resulted in two "strike" convictions.  At one point, the prosecutor made an alternate offer of a determinate term of 15 years with only one "strike" conviction.

5

facts and doesn't know how egregious or if it is egregious at all, what the conduct was in this matter; but just out of a sense of fairness, the court said that it would consider it." The reasons previously stated by appellant's trial counsel were that appellant had wanted to enter into a plea agreement from the very beginning of the case, and was willing to take the sentence described by the prosecutor as part of the package plea.

The court added: "The court has not read these cases though, and I will read the cases. I do know the *Campos* case. I do not know the *Jones* case at all. [¶] And it is my expectation that it is going to state precisely what [the prosecutor] has said. And if that is the case, the court would not have the authority to strike, and that that discretion has been taken away, and the court cannot do anything. But I will read the cases and see if that is exactly what it does state. [¶] And so with that pending, we're going to be moving forward."[4]

The trial court correctly understood *Campos, supra,* 196 Cal.App.4th 438.[5] In that case, Division One of the Fourth District Court of Appeal held that a trial court's discretion to strike section 186.22 sentencing allegations is controlled by section 186.22, subdivision (g), which provides, "Notwithstanding any other law, the court may strike the additional punishment for the enhancements provided in this section or refuse to impose the minimum jail sentence where the interests of justice would best be served. . . ." The court found that section 186.22 allegations which impose an indeterminate life term are an alternate sentencing scheme, not an additional punishment for an enhancement. The

---

[4]     We do not agree with respondent that appellant has forfeited this claim by failing to press the trial court for a ruling, thereby abandoning the claim. The court stated that it was familiar with *Campos*, *supra*, 196 Cal.App.4th 438 which holds that a trial court lacks authority to strike a gang allegation which provides an alternate sentencing scheme. The court's comments clearly indicate that it was denying appellant's motion, subject to reconsideration if the cases were not as described by the prosecutor.

[5]     The only relevance of *People v. Jones, supra,* 47 Cal.4th 566 to the issue before the trial court in this case was the Supreme Court's confirmation that indeterminate life sentences under section 186.22, subdivision (b)(4), are alternate sentencing schemes (or penalty provisions) rather than enhancements. The Court did not consider the issue of a trial court's authority to strike allegations under section 186.22.

6

court concluded that since subdivision (g) did not authorize trial courts to strike alternate sentencing schemes, trial courts had no authority to strike such schemes. (*People v. Campos, supra*, 196 Cal.App.4th at pp. 448-449.)

The court recognized that trial courts have authority under section 1385, subdivision (a), to dismiss sentencing allegations, but held that section 186.22, subdivision (g), provided clear legislative direction that section 1385, subdivision (a), did not apply to section 186.22 allegations. (*People v. Campos, supra*, 196 Cal.App.4th at pp. 450-452.) The court based its holding in large part on the Legislature's decision to begin subdivision (g) with the phrase "[n]otwithstanding any other law." The court characterized this phrase as a "'term of art" [which] expresses a legislative intent "to have the specific statute control despite the existence of other law which might otherwise govern"' [citation] and 'declares the legislative intent to override all contrary law.' [Citation]." (*Id*. at p. 452.) The court also reasoned that subdivision (g) controlled over section 1385 because "the specific statute prevails over the general statute" and "the later-enacted statute prevails over the earlier-enacted statute." (*Id*. at p. 453.) Finally the court believed that using section 1385 to dismiss or strike gang allegations would render section 186.22, subdivision (g), "'redundant and unnecessary'" or mere 'meaningless surplusage' and courts "do [not] construe statutory provisions so as to render them superfluous." (*Id*. at p. 454.)

Appellant does not attack the reasoning of *Campos, supra,* 196 Cal.App.4th 438 in this appeal, apparently believing that it was settled law and such an argument would be futile in an intermediate appellate court. Instead, he argues that even if the trial court lacked authority to strike the gang allegation, the court had the authority under section 1385 to dismiss the entirety of count 1. We nevertheless exercise our discretion to consider appellant's claim, made in the trial court, that a trial court does have authority to strike a section 186.22, subdivision (b)(4), gang allegation.

We review conclusions of law de novo. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712.) A "disposition that rests on an error of law constitutes an abuse of discretion." (*In re Charlisse C*. (2008) 45 Cal.4th 145, 159.)

7

We disagree with the holding of *People v. Campos, supra*, 196 Cal.App.4th 438. We hold that section 186.22, subdivision (g), does not contain "clear language" signaling the Legislature's intent to eliminate a trial court's authority under section 1385, subdivision (a), to strike factual sentencing allegations under section 186.22, subdivision (b), imposing an alternate sentencing scheme.[6] That authority remains.

A trial court has authority under section 1385, subdivision (a), to strike factual allegations relevant to sentencing, including both enhancement allegations and allegations which support an alternate sentencing scheme. (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 518, 527, 529-530 [trial court has power to strike or dismiss three strike allegations; three strikes law is an alternate sentencing scheme].) The Legislature may eliminate a court's power to strike or dismiss under section 1385, but "we will not interpret a statute as eliminating courts' power under section 1385 'absent a clear legislative direction to the contrary.'" (*Ibid*.) There is no such clear direction in section 186.22, subdivision (g).

Subdivision (g) begins with the phrase "[n]otwithstanding any other law." This phrase in a statute is a term of art which signals the legislative intent that the statute control, override or displace contrary, conflicting or inconsistent law. (*In re Greg F.* (2012) 55 Cal.4th 393, 406 [contrary]; *Arias v. Superior Court* (2009) 46 Cal.4th 969, 983 [conflicting]; *People v. Superior Court (Romero), supra*, 13 Cal.4th at p. 524 [inconsistent].) Generally, when the Legislature has intended to eliminate the trial court's section 1385, subdivision (a), power to dismiss or strike a factual sentencing allegation, it has done so directly and by using the word "notwithstanding" to contrast inconsistent propositions. There are numerous examples of this direct limitation, including section 667.61, subdivision (g), which provides: "Notwithstanding Section 1385 or any other provision of law, the court shall not strike any allegation, admission, or finding of any of the circumstances specified in subdivision (d) or (e) for any person who is subject to

---

[6] The issue of whether section 186.22, subdivision (g), restricts a trial court's authority under section 1385 is now before the California Supreme Court in *People v. Fuentes,* review granted August 13, 2014, S219109.

punishment under this section."[7]  That is not the case with section 186.22, subdivision (g).

Section 186.22, subdivision (g), does not directly mention section 1385, and does not prohibit any action otherwise permitted by section 1385.  Rather, section 186.22, subdivision (g), like section 1385, gives the trial court power to strike.  Subdivision (g) gives the court the power to strike the additional punishment imposed once certain section 186.22 enhancement allegations have been found true.  Section 1385, subdivision (a), gives the trial court power to strike factual sentencing allegations (including enhancement allegations), or to dismiss them.  Dismissing or striking a factual sentencing allegation and striking the additional or alternate punishment when the enhancement allegation is found to be true are two different things.  (See *In re Pacheco* (2007) 155 Cal.App.4th 1439, 1444 ["Having decided to afford leniency in this case, the sentencing court had two options.  It could either strike the enhancement allegation in its entirety or strike the additional three-year punishment for the enhancement"].)  Thus, the two options are compatible with each.

The trial court's power to dismiss or strike factual sentencing allegations under section 1385 is not contrary to, in conflict with, or inconsistent with the court's power to strike the additional punishment for the allegation under section 186.22, subdivision (g).  Thus, use of the phrase "[n]otwithstanding any other law" in section 186.22, subdivision (g), is not "clear language" (*People v. Fritz* (1985) 40 Cal.3d 227, 230) signaling the Legislature's intent to eliminate a trial court's section 1385, subdivision (a), authority to strike a factual sentencing allegation made pursuant to section 186.22, subdivision (b).

We recognize that subdivision (c)(1) of section 1385 gives a trial court the power to strike the additional or alternate punishment for a factual sentencing allegation if the court has the power to dismiss or strike the allegation under section 1385, subdivision (a).  As the court in *Campos* pointed out, we do not construe statutes in a manner to make them redundant.  (*People v. Campos, supra*, 196 Cal.App.4th at pp. 454-455.)  An

---

[7]  Similar express references to section 1385 are found in section 667.71, subdivision (d), section 12022.5, subdivision (c), and section 12022.53, subdivision (h).

9

examination of legislative history shows, however, that section 186.22, subdivision (g), was not redundant when it was enacted.

Section 1385 was enacted in 1872. (*People v. Bonnetta* (2009) 46 Cal.4th 143, 148.) Subdivision (c) of section 1385 was not enacted until 2000 and was added by Statutes 2000, chapter 689, section 3, enacting Assembly Bill No. 1808 (1999–2000 Reg. Sess.). (Historical and Statutory Notes, 51A pt. 1 West's Ann. Pen.Code (2011 ed.) foll. § 1385, p. 287.) Section 186.22, subdivision (g), was enacted as part of the original legislation in 1989 and initially was codified as section 186.22, subdivision (d). (Stats.1989, ch. 930, § 5.1, pp. 3253–3254; 47 West's Ann. Pen. Code (1999 ed.) amend. history foll. § 186.22, p. 465.)

Thus, when section 186.22 was enacted, section 1385 did not include subdivision (c) and did not give the trial court authority to strike the additional or alternate punishment for a factual sentencing allegation. Section 186.22. subdivision (g) (initially codified as section 186.22, subdivision (d)) complemented, rather than displaced, section 1385, subdivision (a), by granting the trial court such additional power.

The trial court in this matter understandably was unaware that it had the authority under section 1385 to strike the section 186.22, subdivision (b)(4), allegation in this matter. Nevertheless, a trial court's failure to exercise discretion is an abuse of discretion, even when based on a mistaken belief it lacked discretion. (*People v. Orabuena* (2004) 116 Cal.App.4th 84, 99-100.) We cannot say the trial court's mistaken belief was harmless.

The court indicated before trial that it would consider striking the allegation if it had the authority to do so. After trial, the court indicated that it still believed that a low sentence was appropriate. The court stated: "Mr. Venegas, I have made representations in the past that based upon the fact that even prior to the preliminary hearing I believe that you wished to accept the People's offer which was a determinate term of I believe it was 10 years . . . . And that based upon let's call it the reluctance of Mr. Estrada to accept any deal in his matter, you were unable to accept that offer which was a package offer. [¶] And it is my intent still, but I will hear from you and I will hear from Ms. Hardiman

10

also, to sentence you to the lowest amount of time that I can. That is still a life term unfortunately, but that is still my intent." The court did in fact sentence appellant to what it believed was the lowest possible term. The court's statement that "unfortunately" the lowest term was a life term is a strong indication that the court still believed a determinate term could be appropriate. The matter must be remanded to permit the trial court to exercise its discretion.

Accordingly, we vacate appellant's conviction and remand the matter to the trial court to consider appellant's motion to enter an open plea. If the court denies this motion, the conviction is ordered reinstated. The trial court should then exercise it discretion and resentence appellant.

[Sections 2 through 5 are deleted from publication, see note at page 19 where publication is to resume]

2. Package plea agreement

Appellant contends the prosecutor's offer of a package plea bargain offer constituted prosecutorial misconduct. Appellant further contends that if his claim is forfeited because he did not object on this specific ground in the trial court, he received ineffective assistance of counsel.

As we discuss above, the prosecutor's offer required both appellant and co-defendant Estrada to plead guilty in order for the offer to be effective. Estrada made it clear on several occasions that he would not accept the offer. Appellant's counsel made various attempts to obtain a plea bargain for appellant alone. However, at no point did appellant's counsel claim that the package plea offer constituted prosecutorial misconduct. Accordingly, appellant has forfeited this claim. (*People v. Lopez* (2008) 42 Cal.4th 960, 966.)

Appellant contends that if his claim has been forfeited, he received ineffective assistance of counsel. Appellant has the burden of proving ineffective assistance of counsel. (*People v. Pope* (1979) 23 Cal.3d 412, 425.) In order to establish such a claim,

11

appellant must show that his counsel's performance fell below an objective standard of reasonableness, and that, but for counsel's error, a different result would have been reasonably probable. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 694; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington*, *supra*, 466 U.S. at p. 694.) "'Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' [Citations.]" (*People v. Thomas* (1992) 2 Cal.4th 489, 530-531.)

"When a claim of ineffective assistance is made on direct appeal, and the record does not show the reason for the counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation." (*People v. Anderson* (2001) 25 Cal.4th 543, 569.)

Appellant contends his ineffective assistance of counsel claim is cognizable on direct appeal because his trial counsel could not possibly have had any valid trial strategy for refraining from arguing prosecutorial misconduct.

Package plea bargains are proper as long as their terms are not coercive. (*Liang v. Superior Court* (2002) 100 Cal.App.4th 1047, 1056.) The primary danger of coercive package plea bargains is that they will induce a false or involuntary guilty plea. (*In re Ibarra* (1983) 34 Cal.3d 277, 287-288.) An example of a coercive circumstance is a defendant who pleads guilty because he fears his co-defendant would attack him if he did not accept the plea offer. (*Id*. at p. 287.) There is nothing in the plea offer in this case which suggests coercion.

A prosecutor's offer of a package deal may constitute misconduct and thus violate due process when "the prosecutor did something entirely unnecessary to the proper performance of her duties to transform a willing witness into an unwilling one." (*People v. Conerly* (2009) 176 Cal.App.4th 240, 248.) Here, there is nothing to suggest that a

12

willing witness would be transformed into an unwilling one by the package plea bargain offer.

As our Supreme Court has recognized, "the 'package deal' may be a valuable tool to the prosecutor, who has a need for all defendants, or none to plead guilty. The prosecutor may be properly interested in avoiding the time, delay and expense of trial of all the defendants." (*In re Ibarra, supra*, 34 Cal.3d at p. 289, fn. 5.) Here, the prosecutor opposed appellant's severance motion on the ground that the witnesses and other evidence would be the same for both defendants. Thus, a guilty plea from appellant alone would not have enabled the prosecutor to reduce the time, delay and expense of trial.

Since, on the record before us, a claim of prosecutorial misconduct would have lacked merit, appellant has not shown a reasonable probability that he would have received a more favorable outcome if his trial counsel had raised a claim of prosecutorial misconduct. Ineffective assistance of counsel claims are often more appropriately raised in a petition for writ of habeas corpus, where matters outside the trial record may be considered. That is particularly true in the case of plea agreements, which frequently involve matters outside the normal trial record.

### 3. Court's refusal to re-appoint counsel

Appellant contends the trial erred in refusing to re-appoint counsel for co-defendant Estrada, and that error violated appellant's right to due process under the 5th and 14th Amendments of the U.S. Constitution. Specifically, he contends that if counsel had been re-appointed, counsel might have been able to convince Estrada to accept the plea bargain, thereby giving appellant the opportunity to accept his part of the package plea offer. Appellant has forfeited this claim by failing to raise it in the trial court.[8] Further, appellant lacks standing to raise this claim.

---

[8]     *People v. Partida* (2005) 37 Cal.4th 428, 434; *People v. Brown* (1980) 110 Cal.App.3d 24, 35-36.

13

Appellant contends that a defendant has standing under the due process clause to challenge the denial of a constitutional right belonging to a third party, if that denial affects the defendant's own rights. Such standing is limited. Two of the three cases that appellant cites to support his standing claim standing involve violations of the rights of witnesses. (*People v. Williams* (2010) 49 Cal.4th 405, 452; *People v. Bunyard* (2009) 45 Cal.4th 836, 850.) The third case involves the right of a passenger to challenge an illegal search of the car in which he or she was riding. (*Brendlin v. California* (2007) 551 U.S. 249.) Appellant has not cited, and we are not aware of, any case holding that a defendant has the right to assert a violation of his co-defendant's right to counsel.

Even if standing were theoretically possible, appellant has not shown that he was harmed by the trial court's refusal to re-appoint counsel for Estrada. It is pure speculation on appellant's part that counsel would have been able to persuade Estrada to accept the plea bargain. (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 1000 [no standing where prejudicial effect of alleged error is "merely speculative"].) Accordingly, we reject appellant's standing claim.

Further, even if appellant had standing, his claim that Estrada's rights were violated would lack merit. While appellant's appeal was pending, we decided the appeal of co-defendant Estrada and held that the trial court did not err in refusing to re-appoint counsel for Estrada.

4. Sufficiency of the evidence – primary activities of gang

Appellant adopts by reference co-defendant Estrada's contention that there is insufficient evidence of the primary activities element of the gang allegation and so insufficient evidence to support the jury's true finding on that allegation. Appellant also contends the trial court erred in failing to instruct the jury on the definition of vandalism, the expert's testimony that "gun possession" was a primary activity of the gang was insufficient because gun possession is not per se illegal and there is no evidence to support the expert's testimony that BKM gang members steal cars.

14

a. Estrada's contentions

Estrada contended in his appeal that Detective Sumner never actually testified about the primary activities of the gang. In deciding Estrada's appeal, we rejected this claim. We also reject it here.

The detective testified as follows: [¶] "Prosecutor: Now, CV BKM, once they went from becoming a tagging crew that, basically, just did graffiti, to becoming a full fledged criminal street gang, do they have some primary activities that they engaged in? [¶] Sumner: Yes. [¶] Prosecutor: And you stated before some guys are better at different types of crimes, correct? [¶] Sumner: Just like deputies are better at different types of jobs. [¶] Prosecutor: Different specialties? [¶] Sumner: Different specialties. [¶] Prosecutor: Okay. What are the primary activities, let's call it the specialties of CV BKM? [¶] Sumner: Common things for Compton Varrio Born Krazy Minded is they're always caught with guns. They always have guns, whether they're selling them, just carrying them, moving them around, they always have guns. They steal cars. Vandalism is very common. [¶] Prosecutor: Are those the primary activities that, in your experience, you have found are the types of crimes that members of CV BKM have most often engaged in? [¶] Sumner: That and shootings. [¶] Prosecutor: Have you personally investigated gun possession cases, vandalism cases, car theft cases, shootings committed by members of CV BKM? [¶] Sumner: Yes."

Estrada argued that the expert's use of the word "common" somehow indicated that the listed activities were not the primary activities of the gang. As we explained, the detective was directly answering a question about primary activities when he used the word "common." Immediately after this response, the prosecutor asked "Are those the primary activities" that members of "CV BKM have most often engaged in?" The detective responded, "That and shootings." Taken as a whole, the detective's testimony did identify the primary activities of the gang as gun related crimes, car theft, vandalism and shootings. (See *People v. Margarejo* (2008) 162 Cal.App.4th 102, 107 ["the jury has ample reason to infer that [the expert's] answer implicitly incorporated the word 'primary' from the question. Ordinary human communication often is flowing and

15

contextual. [The defendant's] objection here calls for an unreasonably restrictive interpretation of the [the expert's] answer, which we respectfully decline."].)

Estrada also contended that the detective's testimony showed only that BKM committed misdemeanor vandalism, which is not a crime listed in section 186.22, subdivision (e). In his answer about primary activities, the detective referred only to "vandalism" without specifying whether it was misdemeanor or felony vandalism. When the detective offered proof of crimes committed by the gang, however, one of those crimes was specifically identified as felony vandalism. Thus, as we explained, the detective's testimony as a whole is most reasonably understood as referring to felony vandalism.

Estrada also argued that Detective Sumner was not qualified as an expert and his testimony lacked foundation. He did not object on these grounds in the trial court and we held that he has forfeited these claims on appeal. (See *People v. Bolin* (1998) 18 Cal.4th 297, 321 [forfeiture of claim that witness was not qualified as an expert]; *People v. Nelson* (2012) 209 Cal.App.4th 698, 710-711 [forfeiture of foundational deficiency claim].)

Assuming the issue were not waived, the detective had solid expert qualifications and there was ample foundation for the detective's testimony. Detective Sumner had been a Compton police officer for 14 years, and had worked in the gang unit since 2007. Although BKM was not on his list of assigned gangs in the gang unit, he had broad experience with gangs. He had contact with over a hundred gang members a day when he worked in the county jail for a year, interviewed gang members for three years while working intake at the inmate reception center, patrolled Compton and learned about Compton in the process for about five years, investigated and interviewed gang members as an investigator since 2007, handled hundreds of Compton gang cases, taught and lectured about Black and Hispanic gangs and the Mexican Mafia, and was one of the first deputies to be interested in BKM. Further, he had personally investigated BKM crimes and spoken with BKM members. This is more than sufficient to qualify Detective Sumner as an expert and to provide a foundation for his opinion. (See, e.g., *People v.*

*Martinez* (2008) 158 Cal.App.4th 1324, 1330.) Some of the detective's knowledge did come from speaking with other detectives, but experts are permitted to rely on hearsay. (See *People v. Campos* (1995) 32 Cal.App.4th 304, 307-308 [expert witnesses may rely upon reliable hearsay in forming their opinions]; *People v. Sisneros* (2009) 174 Cal.App.4th 142, 154 ["admission of expert testimony based on hearsay will not typically offend confrontation clause protections"]; see also *People v. Sengpadychith* (2001) 26 Cal.4th 316, 324 [gang expert relied on information from colleagues].)

        b. Appellant's additional contention – vandalism

Appellant contends the trial court erred in failing to instruct the jury on the definition of vandalism. This issue was raised by co-defendant Estrada in his appeal, under a separate heading.

Estrada contended that the trial court should have instructed the jury on the difference between felony and misdemeanor vandalism, and also instructed the jury that only felony vandalism could be a qualifying primary activity of the gang. We found no error.

There was no testimony or argument in this case about misdemeanor vandalism. As we discuss, supra, Detective Sumner's testimony as a whole identified felony vandalism as a primary activity of the gang. One of the convictions offered to show a pattern of criminal activity by the gang was a conviction for felony vandalism. There is nothing to indicate that the jury was even aware that the crime of misdemeanor vandalism existed. The jury's task was not to decide whether one of BKM's primary activity was misdemeanor or felony vandalism; it was to decide whether to accept or reject Detective Sumner's testimony that one of BKM's primary activities was felony vandalism.

Appellant cites no authority for his claim that the court was required to instruct on the elements of vandalism. In his appeal, Estrada relied on a suggestion in the Bench Notes for the instruction. As respondent pointed out, the Bench Notes also say that the court need not instruct on the elements of a crime when it has been shown by a conviction. That was the case here.

c. Appellant's additional contention – gun possession

Appellant contends Detective Sumner was wrong when he testified that "gun possession" was a primary activity within the meaning of section 186.22, because a primary activity must be a criminal act, and simply possessing a firearm is not a criminal act.

Detective Sumner testified that BKM gang members are "always caught with guns. They always have guns, whether they're selling them, just carrying them, moving them around, they always have guns." The prosecutor later referred to these activities as "gun possession" when asking the detective about the crimes he had investigated and this short-hand designation was used thereafter. The detective agreed that he had investigated the crimes listed by the prosecutor. The detective's answer is most reasonably understood as referring to investigating those types of gun possession which he had previously described and which are illegal. It was alleged in this case that co-defendant Estrada was prohibited from possessing a firearm but possessed one in violation of section 12021. Further, Detective Sumner testified that BKM gang members possessed guns for, inter alia, the purposes of selling them. A violation of section 12021 is a criminal act and a primary activity under section 186.22, subdivision (e)(31) and the sale, delivery or transfer of a firearm is a criminal act and a primary activity under section 186.22, subdivision (e)(22).

d. Car theft

Appellant contends that is no evidence to support Detective Sumner's testimony that a primary activity of the gang was stealing cars. Detective Sumner testified as an expert and was entitled to base his opinion on his experience and any out-of-court materials of the type generally relied upon by expert. (*People v. Hill* (2011) 191 Cal.App.4th 1104, 1124.) The detective's testimony that he had personally investigated car theft cases committed by members of BKM is sufficient evidence to support the detective's opinion that a primary activity of the gang was car theft.

18

### 5. Cumulative error

Appellant contends that even if the errors in this case were not prejudicial standing alone, their cumulative prejudice requires reversal. (See *People v. Hill* (1998) 17 Cal.4th 800, 844.) He further contends the cumulative prejudice violate his due process rights under the U.S. Constitution. (See *Chambers v. Mississippi* (1973) 410 U.S. 284.) This matter is being remanded to the trial court for its consideration of sentencing issues. Appellant's other claims lack merit, and so there is no prejudice to consider, singly or cumulatively.

[The balance of the opinion is to be published]

### Disposition

Appellant's conviction is reversed and this matter is remanded to the trial court for consideration of appellant's motion to enter an open plea. If the trial court denies that motion, appellant's conviction is ordered reinstated. The trial court may then resentence appellant. The judgment is affirmed in all other respects.

CERTIFIED FOR PARTIAL PUBLICATION

MINK, J.[*]

I concur:

MOSK, J.

---

[*] Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

I concur except for the conditional reversal.  I would affirm.  In my view, the trial court had no authority to strike the Penal Code section 186.22, subdivision (b)(4) sentencing scheme.  (*People v. Briceno* (2004) 34 Cal.4th 451, 460*; People v. Campos* (2011) 196 Cal.App.4th 438, 446-454.)  Finally, it is unlikely the trial court would have taken such an unusual action.  This case involves an aggravated gang shooting and efforts to injure deputy sheriffs during a high-speed pursuit.  Defendant admitted he had been a gang member for eight years.  Any error was harmless under any standard of reversible error.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *Chapman v. California* (1968) 396 U.S. 18, 22; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

**CERTIFIED FOR PUBLICATION**

TURNER, P. J.