Filed 5/21/15  P. v. Gomez CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B254039 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA402230) |
| v. | |
| CHRISTIAN GOMEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gail Ruderman Feuer, Judge.  Affirmed as modified.

Joanna Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven E. Mercer and William N. Frank, Deputy Attorneys General, for Plaintiff and Respondent.

**INTRODUCTION**

A jury convicted defendant and appellant Christian Gomez of second degree robbery (Pen. Code, § 211[1]) and dissuading a witness by force or threat (§ 136.1, subd. (c)(1)). It further found that defendant committed the robbery and dissuading offenses for the benefit of, at the direction of, or in association with a criminal street gang as provided in section 186.22, subdivisions (b)(1)(C) and (b)(4), respectively. The trial court found true the allegations that defendant suffered a prior conviction charged under the "Three Strikes" law (§§ 667, subds. (b)-(i); 1170.12, subds. (a)-(d)) and section 667, subdivision (a). The trial court sentenced defendant to 19 years to life in state prison.

On appeal, defendant contends that the trial court abused its discretion in admitting evidence consisting of statements and testimony referring to his gang moniker, erred in instructing the jury on the dissuading a witness offense, abused its discretion in denying his post-trial *Faretta*[2] motion to represent himself, should have stayed the sentence for his robbery conviction under section 654, and abused its discretion in denying his motion to strike the alternate punishment prescribed by section 186.22, subdivision (b)(4)(C) (section 186.22(b)(4)(C)) for his dissuading a witness conviction. We order defendant's sentence for his robbery conviction stayed under section 654 and his abstract of judgment modified to reflect the section 654 stay. We otherwise affirm the judgment.

**BACKGROUND**

About on September 1, 2012, Maria Mejia heard a noise that sounded as if someone was attempting to force open the door of her apartment. Mejia unlocked the door, and looked outside. She saw defendant sitting on the ground. Before she closed the door, she noticed that "the handle was broken outside."

---

[1]     All statutory citations are to the Penal Code unless otherwise noted.

[2]     *Faretta v. California* (1975) 422 U.S. 806.

About 5:15 p.m. on September 4, 2012, Mejia returned to her apartment from the market. She was unable to enter her apartment because her roommate was not home and she did not have a key. Mejia waited near the apartment building's mailboxes for her roommate to return. As she waited, she saw defendant walking up the stairs from the underground parking lot.

Defendant walked over to Mejia. Mejia asked defendant if he knew who had broken the door handle three days earlier. Defendant did not respond to the inquiry. Instead, he approached Mejia in a "very harsh way" and told her, "I don't want you here." Defendant said, "Go away, get out of the building." He told Mejia, "You have to leave, this is my barrio. This is my neighborhood." Defendant also said, "Breed's my barrio." Defendant's tone was "very aggressive." "Breed" was a name of a street next to Mejia's apartment building.

Defendant approached Mejia, and she backed up against a wall. Mejia said that defendant was not the building's manager and he could not kick her out. She said that if defendant did not stop bothering her, she would call the police. Defendant told Mejia that he wanted her to "get out of the building" and that "this is my neighborhood." He said that if Mejia and her roommate did not leave, they would "get fucked up." Defendant said the word "Breed" many times.

Mejia attempted to remove her cell phone from her pants pocket with her right hand. Defendant grabbed Mejia's hand and the phone. He twisted her right hand and pulled her thumb "all the way back," injuring her thumb. Defendant took Mejia's cell phone from her.

Mejia yelled that she needed help and called for someone to call 911. Her shouts drew some of her neighbors outside. Mejia did not receive any help from her first floor neighbors and started to go upstairs. Before she was able to go upstairs, defendant punched her in the face. The punch hurt "a lot," and Mejia was afraid. Defendant said, "If you don't get out of here, you're going to—it's going to be bad for you. And if you rat on me . . . you're going to get fucked up."

3

Mejia asked Luis Hernandez, who managed the apartment building with his wife Reyna, to call 911. Defendant continued to tell Mejia, "[T]his is my barrio, I don't want you here." Ms. Hernandez heard Mejia yelling for help. She looked out of her apartment, and saw defendant near Mejia. Ms. Hernandez recognized defendant because he previously had been a tenant in the building. She had talked with defendant before, and he responded to her when she referred to him by the name "Suspect." Defendant told Ms. Hernandez that he was a member of the Breed Street gang.

Ms. Hernandez called 911. She told the 911 operator, "[T]he guy's name is 'Suspect' he's still out there. [¶]-[¶] [T]hey call him '[S]uspect' he's from Breed Street." The police arrived within about five or six minutes. Defendant ran when the police arrived.

Mejia told the police that her assailant was known in the neighborhood as "Suspect." The police asked Mejia to go to the police station while they searched for defendant. At the police station, Mejia identified defendant, the person she knew as "Suspect," from a photographic lineup. Under defendant's photograph, Mejia wrote that the person in the photograph was the person who hit her in the face and stole her phone.

Los Angeles Police Department officers arrested defendant at his home. While there, a police officer dialed the number for Mejia's cell phone. At that time, another officer heard a phone ringing in the attic in the hallway just outside of defendant's apartment. The officer entered the attic and recovered Mejia's cell phone.

The prosecution's gang expert testified that defendant was a member of the Breed Street gang whose gang moniker was "Suspect." The expert opined, based on a set of hypothetical facts matching the facts in this case, that such robbery and dissuading offenses would have been performed for the benefit of, at the direction of, or in association with the Breed Street gang. According to the expert, defendant committed the robbery and dissuading offenses for the benefit of the gang.

4

## I.  Admission of Evidence of Defendant's Gang Moniker ("Suspect")

In identifying Mejia's assailant, Ms. Hernandez told the 911 operator, "they call him Suspect." Defendant contends that the trial court erred in admitting that evidence over defendant's objection because it was hearsay. Mejia testified that when she identified her assailant to the police she told them that in the neighborhood "they call him Suspect." Defendant contends that the trial court erred in admitting that testimony because it lacked foundation. We need not discuss the admissibility of the evidence because even if the trial court erred in admitting the challenged evidence, any such errors were harmless.

### A.  *Background*

Defense counsel made a hearsay objection to the admission of Ms. Hernandez's 911 call in which she identified Mejia's assailant by saying, "[T]hey call him 'Suspect'" and sought to redact that statement. The trial court admitted the evidence under the spontaneous statement exception to the hearsay rule. (Evid. Code, § 1240.[3])

After identifying defendant in court as her assailant, Mejia testified that she had identified her assailant to the police as "Suspect,"—"they call him Suspect" in the neighborhood. Defense counsel objected that the testimony was without foundation. The trial court overruled the objection, subject to the prosecutor laying a proper foundation. Mejia testified that she had lived in the area for two years and that any time she heard someone "call" or "yell" at her assailant that person used the name "Suspect." The trial court ruled that the prosecutor had laid a proper foundation, but limited the testimony's

---

[3]  Evidence Code section 1240 provides:

"Evidence of a statement is not made inadmissible by the hearsay rule if the statement:

"(a)  Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and

"(b)   Was made spontaneously while the declarant was under the stress of excitement caused by such perception."

admission to whom Mejia identified and not whether "Suspect" was in fact defendant's name.

###### B.    Harmless Error

"Absent fundamental unfairness, state law error in admitting evidence is subject to the traditional *Watson* test:  The reviewing court must ask whether it is reasonably probable the verdict would have been more favorable to the defendant absent the error." (*People v. Partida* (2005) 37 Cal.4th 428, 439, citing *People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Reed* (1996) 13 Cal.4th 217, 230-231 [applying the *Watson* test to the admission of hearsay evidence]; *People v. Lucas* (1995) 12 Cal.4th 415, 468 [applying the *Watson* test to the admission of evidence without sufficient foundation].)  In this case, even if the trial court erred in admitting evidence in Ms. Hernandez's 911 call and Mejia's testimony that Mejia's assailant was called "Suspect" by others, any such errors were harmless.  Mejia identified defendant from a photographic lineup and at trial as her assailant.  Ms. Hernandez also identified defendant at trial as Mejia's assailant.  The police recovered Mejia's stolen cell phone in the attic just outside of defendant's apartment.  Given that evidence, it is not reasonably probable that the verdict would have been more favorable to defendant if the trial court had not admitted Ms. Hernandez's 911 call and Mejia's challenged testimony.  (*People v. Partida, supra,* 37 Cal.4th at p. 439; *People v. Reed, supra,* 13 Cal.4th at pp. 230-231; *People v. Lucas, supra,* 12 Cal.4th at p. 468.)

## II.    The Dissuading a Witness Instruction (CALCRIM No. 2622)

Defendant was convicted of dissuading a witness from reporting a crime by force or threat in violation of section 136.1, subdivision (c)(1).[4]  He contends that the trial

---

**4**    Section 136.1 provides, in relevant part,
    "(b)  Except as provided in subdivision (c), every person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a

6

court violated its sua sponte duty to instruct the jury on the crime and the elements of the crime he was alleged to have dissuaded Mejia from reporting. Because defendant failed to request that the trial court modify CALCRIM No. 2622,[5] the relevant instruction, he forfeited review of this issue.

---

crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison:

"(1) Making any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge.

"[¶]-[¶]

"(c) Every person doing any of the acts described in subdivision (a) or (b) knowingly and maliciously under any one or more of the following circumstances, is guilty of a felony punishable by imprisonment in the state prison for two, three, or four years under any of the following circumstances:

"(1) Where the act is accompanied by force or by an express or implied threat of force or violence, upon a witness or victim or any third person or the property of any victim, witness, or any third person."

[5]     The trial court instructed the jury with CALCRIM No. 2622 as follows:

"The defendant is charged in count 2 with dissuading a witness from reporting a crime by force or fear in violation of Penal Code section 136.1(c)(1).

"To prove that the defendant is guilty of this crime, the People must prove that:

"1.     The defendant maliciously tried to prevent or discourage Maria Mejia from making a report that she was a victim of a crime to the police;

"2.     Maria Mejia was a crime victim;

"AND

"3.     The defendant knew he was trying to prevent or discourage Maria Mejia from making a report that she was a victim of a crime to the police and intended to do so.

"A person acts maliciously when he unlawfully intends to annoy, harm, or injure someone else in any way, or intends to interfere in any way with the orderly administration of justice.

"As used here, witness means someone who knows about the existence or nonexistence of facts relating to a crime.

"It is not a defense that the defendant was not successful in preventing or discouraging the witness.

"It is not a defense that no one was actually physically injured or otherwise intimidated."

7

## A. Background

During a discussion of jury instructions, the trial court stated with respect to CALCRIM No. 2622, "[T]here's a definition of a crime. I'm inclined to think that's unnecessary in this case, but I can give it if either side requests it as to when a person is a victim." Both the prosecutor and defense counsel responded that they were not requesting such a modification. The trial court stated, "So I'm not going to give that. I think fairly obvious a robbery would be a crime."

## B. Forfeiture

"Generally, a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language." (*People v. Andrews* (1989) 49 Cal.3d 200, 218.) As relevant, CALCRIM No. 2622 correctly stated that the prosecution had to prove that defendant tried to prevent or discourage Mejia from reporting that she was a crime victim and that she was a crime victim. If defendant believed that the trial court should have modified CALCRIM No. 2622 to identify the crime and the elements of the crime he was alleged to have dissuaded Mejia from reporting, he was obliged to request such modification. (*People v. Andrews, supra,* 49 Cal.3d at p. 218.) His failure to do so forfeited review of this issue. (*Ibid.*)

Defendant contends that he did not forfeit review of this issue because the trial court's failure to modify CALCRIM No. 2622 sua sponte affected his substantial rights within the meaning of section 1259[6] because the prosecutor argued to the jury, in discussing the dissuading charge, that Mejia was a crime "'victim' because she had a 'right to call the police' and nothing in the instruction disputed that.'" We do not perceive how this one-sentence, perfunctory contention involves "substantial rights" within the meaning of section 1259.

---

[6] Section 1259 provides, in relevant part, "The appellate court may . . . review any instruction given, refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby."

In a second one-sentence argument, defendant contends, without explanation, that if defense counsel forfeited review of this issue by failing to request a modification in the trial court, then defense counsel provided ineffective assistance of counsel. The failure to object, however, to a correct jury instruction is not ineffective assistance of counsel. (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1170.) As stated above, CALCRIM No. 2622 is a correct statement of the law.

## III.    Defendant's Post-Trial *Faretta* Motion

Defendant contends that the trial court abused its discretion in denying his *Faretta* motion to represent himself. The trial court acted within its discretion.

### A.    Background

On May 3, 2013, during Ms. Hernandez's cross-examination , defendant stood and yelled, "This lady, she's lying. I'm innocent. They're trying to send  me to prison for life. They're lying." The trial court advised defendant that he was to sit quietly and informed him that if he could not, he would be removed. The trial court asked defendant if he could sit quietly. Defendant responded, "I'm innocent." The trial court stated that defendant was going to be "excused" from the courtroom. Defendant said, "I'm innocent. She's lying." The trial court told defendant that he could testify if he wanted, but could not speak while seated as a defendant. Defendant responded, "You guys are setting me up," a charge he twice repeated. At some point during defendant's outburst, he was acting in a "very hostile manner" and "needed to be controlled," so the bailiff placed him in handcuffs and removed him from the courtroom.

Later that day, during the prosecution's case-in-chief, defendant moved to represent himself. Defendant informed the trial court that he was not then ready to defend himself and that he would need a one-month continuance. The trial court denied defendant's *Faretta* motion as untimely, stating that if it granted the motion, it would have to declare a mistrial and excuse the jury, which would be an unreasonable disruption of the orderly processes of justice.

9

The jury rendered its verdicts on May 8, 2013. Through a series of continuances, the trial on defendant's prior conviction allegations and his sentencing hearing were continued to October 25, 2013.

On October 25, 2013, before the trial on defendant's prior conviction allegations, defendant moved to exercise his *Faretta* rights to represent himself. Defendant said that defense counsel had provided ineffective assistance by failing to call witnesses on his behalf. The trial court denied the motion as untimely, informing defendant that he could not exercise his *Faretta* rights during the middle of a trial. It advised defendant that he could renew his motion to represent himself at the conclusion of the prior conviction trial for purposes of his sentencing hearing. Defendant then requested a *Marsden*[7] hearing for substitution of counsel, claiming that he and his attorney were not getting along. The trial court held the *Marsden* hearing and denied defendant's motion for substitution of counsel.

On October 29, 2013, the trial court conducted the trial on the prior conviction allegations and found them to be true. The trial court continued the sentencing hearing to December 20, 2013, to allow defense counsel time to investigate a new witness and to prepare a new trial motion.

At the December 20, 2013, sentencing hearing, defense counsel informed the trial court that defendant wanted to represent himself. She further informed the trial court that, based on her investigation, she would not be filing a new trial motion. She said she would not file a new trial motion because she had thoroughly investigated the potential new witness, including interviewing her multiple times, she had "looked into" the witness's work schedule on the date of the offenses, and she had determined that the witness could not offer exculpatory evidence or an alibi. Defense counsel further stated that the defense had re-interviewed percipient witnesses and visited the apartment building to confirm that there were, and had been, no cameras. Based on that

---

**7**     *People v. Marsden* (1970) 2 Cal.3d 118.

10

investigation, defense counsel did not believe that there was a "good faith basis" to file a new trial motion based on the emergence of the new potential witness.

Defendant informed the trial court that he wanted a *Marsden* hearing and to represent himself pursuant to *Faretta*. He stated that he and defense counsel were "having difficulties." The trial court held a *Marsden* hearing and denied defendant's *Marsden* motion. Defendant then moved to exercise his *Faretta* rights to represent himself.

The trial court observed that the jury had rendered its verdict May 8, 2013, and asked defendant why he had delayed seven months to ask to represent himself. Defendant said that he moved to represent himself during trial. The trial court responded that defendant made a *Marsden* motion on October 25, 2013, but had not previously made a *Faretta* motion. Defendant disagreed.[8]

The trial court asked defendant how much time he would need to prepare to represent himself for the sentencing hearing. Defendant responded that he wanted to file a new trial motion and that he needed to investigate witnesses and whether "there was actually a camera involved." The trial court reminded defendant that defense counsel said she had "looked into all those issues and did not find it." Defendant maintained that there were cameras at the apartment building and that defense counsel had not looked in the right place. The trial court again asked defendant how much time he needed to prepare for the sentencing hearing. Defendant said, "Whatever is convenient to the court. 2 months. 3 months. I need an investigator. An investigator so they can look into the case."

The trial court denied defendant's *Faretta* motion. It found that defense counsel had provided defendant excellent representation and there would not be a different result if he represented himself; defendant had made prior *Marsden* motions and there had been a seven-month delay in his *Faretta* request; defense counsel had extensively investigated the reasons for defendant's requested continuance; defendant's sentencing hearing had

---

[8] Technically, he had made one, but it was untimely.

been continued a number of times, and the trial court had prepared for each of the hearings; and disruption or delay might reasonably be expected if it granted the motion. The trial court said it "envision[ed] significant additional delays" that would cause the sentencing hearing to be held over a year after the jury returned the verdicts. It added that the prosecution had a right to have the case resolved and defendant sent to prison after the guilty verdicts.

The trial court also stated that it had "a serious concern" in allowing defendant to represent himself. The trial court noted that defense counsel had submitted a report from a doctor who opined that defendant had "mental impairments." The report suggested to the trial court that while defendant was competent to stand trial, it was likely that he was not competent to represent himself. According to the report, defendant's neuropsychological test results indicated that he did not "possess the requisite brain capacity with which to consistently exert reasoned control over his behavior," causing the trial court "great concern" about whether defendant could represent himself. The trial court stated that it would have to appoint another psychologist to evaluate defendant to determine if he was competent to represent himself and then hold a hearing on his competence. Only then would the trial court appoint an investigator who would repeat defense counsel's prior investigation. The trial court stated that it would then "set it"—presumably a new trial motion—for hearing and set a briefing schedule. All that would cause the sentencing hearing to be held two years after the guilty verdicts.

The trial court said that if defendant had believed that defense counsel had not conducted a sufficient investigation before trial, then he should have sooner moved to represent himself. Defendant reminded the trial court that he had moved to represent himself during trial and the trial court had denied the motion. The trial court reiterated that it was denying defendant's *Faretta* motion on two grounds: (1) the motion would result in significant delay, and (2) it did not believe that defendant could represent himself adequately.

Defendant objected to the trial court's denial of his *Faretta* motion, calling the ruling "ludicrous" and "crazy." The trial court denied defendant's request to speak with

12

the trial court in camera, telling defendant that he was represented by counsel who should speak for defendant. When defendant continued to address the trial court, the trial court informed defendant that he would be removed from the courtroom and sentenced without being present if he did not stop. Defendant continued to speak to the trial court, and the trial court ordered him removed.

Later the trial court stated that defendant would be permitted to return to the courtroom "if he's willing to speak quietly." Defense counsel spoke with defendant and determined that he would not be returning to the courtroom. The trial court found that defendant had voluntarily absented himself from the courtroom and sentenced him without his being present.

### B. Application of Relevant Principles

"A trial court must grant a defendant's request for self-representation if the defendant unequivocally asserts that right within a reasonable time prior to the commencement of trial, and makes his request voluntarily, knowingly, and intelligently. [Citations.] As the high court has stated, however, '*Faretta* itself and later cases have made clear that the right of self-representation is not absolute.' [Citations.] Thus, a *Faretta* motion may be denied if the defendant is not competent to represent himself [citation], is disruptive in the courtroom or engages in misconduct outside the courtroom that 'seriously threatens the core integrity of the trial' [citations]." (*People v. Lynch* (2010) 50 Cal.4th 693, 721-722, abrogated on another ground in *People v. McKinnon* (2011) 52 Cal.4th 610.) A trial court has no discretion to deny a valid, timely *Faretta* motion. (*People v. Lynch, supra,* 50 Cal.4th at p. 726.) The erroneous denial of a timely motion for self-representation is reversible per se. (*People v. Butler* (2009) 47 Cal.4th 814, 824.)

The California Supreme court has "long held that a self-representation motion may be denied if untimely. [Citation.]" (*People v. Lynch, supra,* 50 Cal.4th at p. 722.) "In order to invoke the constitutionally mandated unconditional right of self-representation, a defendant must assert that right within a reasonable time prior to trial. The latter

requirement serves to prevent a defendant from misusing the motion to delay unjustifiably the trial or to obstruct the orderly administration of justice. [Citation.] If the motion is untimely—i.e., not asserted within a reasonable time prior to trial—the defendant has the burden of justifying the delay. [Citation.]" (*People v. Horton* (1995) 11 Cal.4th 1068, 1110 [motion made on the day of trial was scheduled to start was untimely]; *People v. Hill* (1983) 148 Cal.App.3d 744, 757 ["'it is now settled that a trial court may *deny* a request for self-representation made on the very eve of trial, on the ground that granting the motion would involve a continuance for preparation'"].) Like a request for self-representation at trial, a "request for self-representation at sentencing must be made within a reasonable time prior to commencement of the sentencing hearing. (See [*People*] *v. Mayfield* [(1997)] 14 Cal.4th [668,] 810 [assuming postverdict self-representation motion may be timely if made a reasonable time before sentencing].)" (*People v. Miller* (2007) 153 Cal.App.4th 1015, 1024.)

Once a defendant chooses to proceed to sentencing represented by counsel, the defendant's motion to represent himself is addressed to the trial court's sound discretion. (See *People v. Lynch, supra,* 50 Cal.4th at p. 722.) "In exercising this discretion, the trial court should consider factors such as '"the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion."'" (*People v. Jenkins* (2000) 22 Cal.4th 900, 959, quoting *People v. Windham* (1977) 19 Cal.3d 121, 128 [the *Windham* factors].) The erroneous denial of an untimely *Faretta* motion is reviewed under the harmless error test of *People v. Watson, supra,* 46 Cal.2d at page 836. (*People v. Nicholson* (1994) 24 Cal.App.4th 584, 594-595.)

Defendant's December 20, 2013, post-trial *Faretta* motion was not timely as he made the motion on the date set for the sentencing hearing. (*People v. Miller, supra,* 153 Cal.App.4th at p. 1024.) Defendant contends that his post-trial *Faretta* motion was timely because the trial court told him to wait until "we are at sentencing" to make his motion. Instead, at the hearing on October 25, 2013, the trial court denied defendant's

14

*Faretta* motion stating, "Currently we are in the middle of a trial because we have not concluded this trial. So it is not timely with respect to the trial. If you want to make that request after we finish with the trial on the priors *and before sentencing*, I will consider your request at that time." (Italics added.) The trial court further stated that at the conclusion of the trial on the prior conviction allegations, "when we get to the sentencing, I will hear from you as to a *Faretta* motion at that time." On October 29, 2013, at the conclusion of the trial on defendant's prior conviction allegations, the trial court stated, "So that brings us to the issue of sentencing." Fairly construed, on October 25, 2013, the trial court instructed defendant to make his *Faretta* motion prior to the sentencing hearing and that he would hear defendant's arguments on the motion at the sentencing hearing. On October 29, 2013, the trial court informed defendant that it was time to address sentencing issues—i.e., it was time to make any *Faretta* motion. Accordingly, because defendant did not make his *Faretta* motion until December 20, 2013, the motion was not timely.

The trial court acted within its discretion in denying defendant's untimely *Faretta* motion. When ruling on defendant's *Faretta* motion, the trial court considered the *Windham* factors. It found that defense counsel had provided defendant excellent representation and there would not be a different result if he represented himself; defendant had made prior *Marsden* motions and there had been a seven month delay in his *Faretta* request; defense counsel had extensively investigated the reasons for defendant's requested continuance; disruption or delay might reasonably be expected if it granted the motion—the trial court "envision[ed] significant additional delays" that would cause the sentencing hearing to be held over a year after the jury returned the verdicts. (*People v. Windham, supra,* 19 Cal.3d at p. 128; *People v. Jenkins, supra,* 22 Cal.4th at p. 959.) In addition, defendant's unruly conduct in the courtroom also militated against his *Faretta* request.

15

**IV.    Section 654 Stay**

Defendant contends that the trial erred when it imposed concurrent terms for his robbery (16 years) and dissuading a witness (19 years to life) convictions.  Instead, defendant argues, the trial court should have stayed the sentence for his robbery conviction under section 654.[9]  Respondent agrees, as do we.

"'"Section 654 precludes multiple punishments for a single act or indivisible course of conduct.  [Citation.]'  (*People v. Hester* (2000) 22 Cal.4th 290, 294 [92 Cal.Rptr.2d 641, 992 P.2d 569].)  '"Whether a course of criminal conduct is divisible . . . depends on the intent and objective of the actor."'  (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208 [23 Cal.Rptr.2d 144, 858 P.2d 611].)  '[I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once.  [Citation.]  [¶] If, on the other hand, defendant harbored "multiple criminal objectives," which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, "even though the violations shared common acts or were parts of an otherwise indivisible course of conduct."  [Citation.]'  (*People v. Harrison* (1989) 48 Cal.3d 321, 335 [256 Cal.Rptr. 401, 768 P.2d 1078].)  [¶]  '"The question whether . . . section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination.  Its findings on this question must be upheld on appeal if there is any substantial evidence to support them."  [Citation.]'"  (*People v. Galvez* (2011) 195 Cal.App.4th 1253, 1262-1263.)

At defendant's sentencing, the trial court stated, "With respect to count 1, the People are seeking to run count 1 consecutive.  It seems to me that in this case the robbery and witness intimidation were one series of events, and the issues the cases have

---

[9]    Section 654, subdivision (a) provides, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.  An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

16

held that it's within court's discretion, notwithstanding the somewhat conflicting language of the statute, but that it's within the court's discretion whether to run them consecutive or concurrent, and the principal questions are whether the crimes arose on difference occasions and out of different set of operating facts. They occurred on one occasion, and in my view with the same operative facts in that seems to me the taking of the phone, which is the robbery, it's part of the defendant intimidation because the victim here, Miss Mejia, said that she was going to call the police. So it seems to me the taking of the phone was intertwined with the defendant intimidation."

In *People v. Galvez, supra,* 195 Cal.App.4th 1253, the court of appeal held that section 654 barred punishment for robbery and witness dissuasion convictions when the defendant's objectives in committing those offenses were incidental to each other—i.e., when the purpose of the robbery of the victim's cell phone was so that he could not contact law enforcement and report a crime. (*Id.* at pp. 1262-1263.) In this case, the trial court found that defendant robbed Mejia of her cell phone so that she could not contact the police—i.e., as part of the witness dissuasion offense. Accordingly, the trial court should have stayed defendant's sentence on his robbery conviction—the shorter of the two terms the trial court imposed—under section 654. (*People v. Galvez, supra,* 195 Cal.Ap.4th at pp. 1262-1263.)

## V.     Defendant's Motion to Strike the Alternate Penalty Prescribed by Section 186.22(b)(4)(C)

Defendant contends that the trial court abused its discretion under section 1385 when it denied his motion to strike the alternate penalty prescribed by section 186.22(b)(4)(C) for his dissuading a witness conviction in violation of section 136.1 by failing to credit sufficiently his mental deficiencies. Defendant acknowledges that he brought his motion to strike under section 186.22, subdivision (g) and not under section 1385 and that *People v. Campos* (2011) 196 Cal.App.4th 438, 448-449 held that section 186.22, subdivision (g) does not authorize a trial court to strike section 186.22(b)(4)(C)'s alternate penalty. Defendant contends that we should consider his challenge to the trial

17

court's ruling, however, because the trial court ruled under section 1385 and not section 186.22, subdivision (g). Section 1385's applicability to section 186.22 is before the California Supreme Court.[10] Whether or not the trial court had the discretion under section 1385 to strike the alternate penalty in section 186.22(b)(4)(C), defendant's argument is unavailing—if the trial court did not have discretion, defendant has no argument; if the trial court had discretion, it properly exercised that discretion.

### A.      Background

In his sentencing memorandum, defendant requested the trial court to strike a prior strike conviction under the Three Strikes law (*Romero*[11] motion) and to strike the section 186.22(b)(4)(C) alternate penalty under the discretion granted in section 186.22, subdivision (g). He contended that he was not the type of defendant the Legislature contemplated when it enacted section 186.22(b)(4)(C) due to his alleged severe cognitive deficits. Defendant attached a copy of a report from a neuropsychologist who examined him and determined that he had an IQ of 66—a score that placed him in the first percentile—and other neuropsychological deficits. According to the neuropsychologist, defendant's "pattern of neuropsychological deficits implicates probable brain damage/dysfunction involving the bilateral frontal lobes, left temporal lobe, and bilateral parietal lobes." The tests defendant performed indicated that he did not "possess the requisite brain capacity with which to consistently exert reasoned control over his

---

[10]      In *People v. Venegas* (2014) 229 Cal.App.4th 849, we held that a trial court has discretion under section 1385 to strike allegations under section 186.22, subdivision (b)(4). The California Supreme Court granted the People's petition for review in *People v. Venegas* and deferred further action in the matter pending its consideration and disposition of a "related issue" in *People v. Fuentes,* S219109. (*People v. Venegas* (2014) 181 Cal.Rptr.3d 40.) According to its site, the California Supreme Court will consider in *People v. Fuentes* the following issue: "Does the trial court have the power under Penal Code section 1385 to dismiss a Penal Code section 186.22 enhancement for gang-related crimes, or is the court limited to striking the punishment for the enhancement in accordance with subdivision (g) of section 186.22?"

[11]      *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

behavior." The neuropsychologist opined that defendant's deficits may have resulted from defendant's long-time marijuana use and his mother's possible alcohol use while pregnant with him.

The trial court stated its tentative ruling to deny defendant's motion to strike the section 186.22(b)(4)(C) alternate penalty. It viewed this case as being "all about the gang allegation in that the testimony from the victim was that [defendant] repeatedly said Breed Street, and that this was his barrio, and that she needed to leave and move out because it was his territory. So the entire nature of the offense as related to the gang is related to the gang allegation." The trial court said, "[T]he only thing I would note is that with respect to the circumstances in aggravation, there are more circumstances in aggravation than there are mitigation. I do not believe that the mental state of the defendant supports modifying the sentence, and the only way to modify the sentence would be to state [*sic*] a gang allegation, because that's what bumps it up to the life sentence. That does seem to be the heart of the case."

The trial court made its findings with respect to the circumstances in aggravation and mitigation in connection with its prior ruling on defendant's *Romero* motion. It found that defendant's current offenses—robbery and dissuading a witness were "fairly violent"—defendant punched Mejia in the face and bent her thumb to take her cell phone. Defendant had a prior manslaughter conviction for which he was sentenced to 11 years in state prison. Defendant was released from prison just over a year before the offenses in this case and was on parole at the time of his current offenses. As for defendant's background, character, and prospects, the trial court stated, "The only factor in the favor of potentially striking the prior strike is the cognitive impairment as a mitigating factor. The difficulty I have is that my obligation in sentencing is a combination of both punishment and protection of the public. I do believe that [defendant] continues to pose a serious threat to the public from his actions. I believe upon his release from state prison he's likely to recommit the same type of offense again. It may be that he is somewhat impaired, but he is not impaired to the level that he was not guilty by reason of insanity.

19

It's that he has some cognitive impairment. That does not mean that when placed back on the street he will not commit a similar or otherwise violent crime again."

### B.      Standard of Review

We review a trial court's ruling on a request to strike an enhancement under section 1385 for an abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 375.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.) It is the burden of party attacking the sentence to demonstrate that the trial court abused its discretion. (*Id.* at p. 376.)

### C.      Application of Relevant Principles

Under section 1385, subdivision (a), a "judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." "'"[F]urtherance of justice," requires consideration both of the constitutional rights of the defendant, and *the interests of society represented by the People*, in determining whether there should be a dismissal. [Citations.]' [Citations.] At the very least, the reason for dismissal must be 'that which would motivate a reasonable judge.' [Citations.]" (*People v. Orin* (1975) 13 Cal.3d 937, 945-946.)

In denying defendant's motion to strike the alternate penalty in section 186.22(b)(4)(C), the trial court found that the aggravating factors outweighed the mitigating factors. As aggravating factors, it found that defendant committed violent and serious felonies in this case, he had a prior manslaughter conviction for which he served a term in state prison, and he committed the offenses in this case while on parole and just over one year after his release from prison for his manslaughter conviction. The trial court reviewed the neuropsychologist's report and considered defendant's cognitive impairment in ruling on defendant's motion to strike, and found that his cognitive impairment was a mitigating factor. It ruled, however, that the mitigating effect of

20

defendant's cognitive impairment was outweighed by the threat of future violence defendant posed upon his release from prison. That ruling was neither so irrational nor so arbitrary that a reasonable person could not agree with it. (*People v. Carmony, supra,* 33 Cal.4th at p. 377.) Accordingly, the trial court acted within its discretion, if any, under section 1385 in denying defendant's motion to the strike section 186.22(b)(4)(C)'s alternate penalty. (*People v. Carmony, supra,* 33 Cal.4th at pp. 375, 377.)

### DISPOSITION

We order defendant's sentence for his robbery conviction stayed under section 654 and the abstract of judgment modified accordingly. The judgment is otherwise affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


MOSK, Acting P. J.


We concur:


KRIEGLER, J.


GOODMAN, J.*

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.